OBER | KALER
A Professional Corporation

Ober, Kaler, Grimes & Shriver
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202
410-685-1120 / Fax 410-547-0699
www.ober.com

James E. Edwards, Jr.
jeedwards@ober.com
410-347-7330

Offices In
Maryland
Washington, D.C.
Virginia

February 25, 2011



MISC 11   0148

RECEIVED
MAR - 2 2011
CHAMBERS OF JUDGE GLEESON

GLEESON, J.

<u>VIA FEDERAL EXPRESS</u>

The Honorable Dora L. Irizarry
United States District Court for
The Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York   11201

> Re:   Discovery Dispute Re:  Subpoenas Issued in Relation to
> Case Pending in U.S. District Court for the District of Puerto Rico
> *Estate of Ángel Berganzo Colón v. Ambush*, Civ. No. 10-1044
> (GAG) (D.P.R)

Dear Judge Irizarry:

Pursuant to Local Rule 37.3(c), this letter is to advise the Court of a non-dispositive pre-trial dispute and to seek the Court's assistance to resolve that dispute.  The dispute involves discovery sought by subpoena from this Court relating to the proceeding referenced above, which is pending in the U.S. District Court for the District of Puerto Rico.

<u>BACKGROUND</u>

I represent Joshua M. Ambush, the defendant in the Puerto Rico case and a party in a related case pending in the U.S. District Court for the District of Columbia.

On December 16, 2010, subpoenas from this Court signed by Puerto Rico counsel for Mr. Ambush pursuant to Federal Rule of Civil Procedure 45(a)(3)(b) were served on Dr. Michael Engelberg, Mr. Elizer Perr, and The American Center for Civil Justice, Inc. (the "Center"), an organization of which those two individuals serve as principals.  The subpoenas to Dr. Engelberg and Mr. Perr required that they appear to testify and produce documents on February 24 and 25, respectively.  *See* Attachment A and B.



The Honorable Dora L. Irizarry
February 25, 2011
Page 2

        In a letter sent by e-mail, on the evening on February 21, 2011, Charles R.
Both, Esquire, counsel for Dr. Engelberg and Mr. Perr, notified the undersigned,
as attorney for Defendant Ambush, that Dr. Engelberg and Mr. Perr would not
attend the depositions scheduled on February 24 and 25 and would not produce
documents at that deposition.  *See* Attachment C.  Dr. Engelberg and Mr. Perr
had not previously objected to the production of documents as required by
Federal Rule 45(c)(2)(B), nor had they moved to quash the subpoenas under
Federal Rule 45(c)(3).  Instead, Mr. Both's letter simply "advised that neither
Rabbi Perr nor Dr. Engelberg intends to attend the depositions scheduled for
later this week."  The rationale expressed by Mr. Both for the failure to appear
was that the subpoenas issued to the Center, Dr. Engelberg, and Mr. Perr "are
overly-broad, harassing and issued for the improper purpose, as a back-door
means of discovery in connection with [the District of Columbia Case]."

        I contacted Mr. Both on the morning of February 23, 2011 by telephone in
a good-faith effort to resolve this dispute.  During that call, Mr. Both confirmed
that Dr. Engelberg and Mr. Perr, indeed, would not appear for their depositions
as required by the subpoenas, for the reasons set forth in his letter of
February 21.[1]

### THE NEED FOR DISCOVERY

        In the underlying Puerto Rico case, former clients of Defendant Ambush
ostensibly are seeking the return of attorney's fees paid to him.  At issue in the
Puerto Rico case, among other things, is whether the Center paid Defendant
Ambush for his services, an allegation which he denies.  Another issue in the
Puerto Rico case is whether the Center contacted an attorney in Puerto Rico to
run newspaper advertisements disparaging Defendant Ambush.

        Discovery from Dr. Engelberg and Mr. Perr is required with regard to the
contested allegation in the Puerto Rico case that the Center, which is based in
Brooklyn and of which Dr. Engelberg and Mr. Perr are principals, paid fees to
Defendant Ambush.  Likewise, discovery is required of the Center, Dr.
Engelberg, and Mr. Perr with regard to the Center's involvement in the placement

---

[1] Mr. Both's letter of February 21 alludes to the fact that a subpoena issued out of the Southern
District of New York to Apple Bank was the subject of a Motion to Quash.  At a hearing before
Judge Hillerstein on February 18, 2011, that Court declined a request to quash that subpoena
and simply limited the scope of the documents that Apple Bank would be required to produce.
The subpoena to Apple Bank and the proceedings related to it are not relevant to the question of
whether Dr. Engelberg and Mr. Perr are required to comply with the substantially different
subpoena served upon them by Defendant Ambush.



The Honorable Dora L. Irizarry
February 25, 2011
Page 3

Moreover, the fact that Dr. Engelberg is identified by the Plaintiffs in their Initial Disclosures in the Puerto Rico case as a person with knowledge of facts relevant to the subject matter of that case establishes that the discovery sought pursuant to the subpoenas issued out of this Court is relevant and not, as the deponents contend, either overly broad, harassing, or an improper attempt to obtain discovery in the District of Columbia case. The subpoenas, therefore, are proper.[2]

## RELIEF SOUGHT

Because the undersigned's good-faith efforts to resolve this dispute by conferring with counsel for Dr. Engelberg and Mr. Perr have proven fruitless, Defendant Ambush now seeks an order compelling Dr. Engelberg and Mr. Perr to attend a deposition and this Court's approval, consistent with Local Rule 37.3, to seek judicial resolution of this dispute through proceedings and remedies available under the Federal Rules of Civil Procedure.

Respectfully yours,

James E. Edwards, Jr.

JEEJr/bak

Enclosures

cc:    Charles R. Both, Esquire (via Federal Express)
       David Efron, Esquire (via Federal Express)

---

[2] Although not raised by Mr. Both in objecting to the subpoenas, it has come to the attention of undersigned counsel for Defendant Ambush that the subpoenas served on the deponents call for their attendance in the wrong District. That defect can readily be cured by modification of the subpoena, which is within the Court's discretion under Federal Rule 45, or by its reissuance after resolution of the objection raised in Mr. Both's February 21 letter. It does not justify the deponents' refusal to appear.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 0 2 2011 ★

BROOKLYN OFFICE

GLEESON, J.

MISC 11 0148

# ATTACHMENT A

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | |
|---|---|
| THE ESTATE OF ÁNGEL BERGANZO COLÓN | ) |
| *Plaintiff* | ) |
| v. | ) |
| JOSHUA M. AMBUSH | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   10-1044 (GAG)

(If the action is pending in another district, state where:

District of Puerto Rico            )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Michael Engelberg, 75 Woodmere Blvd., Woodsburgh, NY 11598

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Allyn & Fortuna, LLP | Date and Time: |
|---|---|
| 200 Madison Avenue, Fifth Floor, New York, NY  10016 | 02/24/2011 10:00 am |

The deposition will be recorded by this method:   court reporter

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
All documents requested in the attached Notice of Deposition Duces Tecum and Schedule A attached thereto.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 12/10/2011

CLERK OF COURT

OR

_____        _____
Signature of Clerk or Deputy Clerk                    Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Joshua M. Ambush
_____ , who issues or requests this subpoena, are:
Henry O. Freese-Souffront, USDC-PR No. 215502, McCONNELL VALDÉS LLC, 270 Muñoz Rivera Avenue, Hato Rey, PR  00918, Email: hf@mcvpr.com, Phone:  787-250-5810

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   10-1044 (GAG)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                    *Server's signature*

                                         _____
                                                    *Printed name and title*

                                         _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

THE ESTATE OF ÁNGEL BERGANZO COLÓN
represented by Efraín and Rubén Berganzo; THE
ESTATE OF ANTONIO RODRÍGUEZ MORALES
represented by Noemí Rodríguez Robles, Eliezer
Rodríguez Robles, Ángel M. Rodríguez Robles,
María M. Rodríguez Robles and Ruth D. Rodríguez
Robles,

CIVIL NO. 10-1044 (GAG)

     Plaintiffs,

          v.

JOSHUA M. AMBUSH,

     Defendant.

## NOTICE OF DEPOSITION *DUCES TECUM*

     Joshua M. Ambush, by his undersigned counsel and pursuant to Rules 30, 34 and 45 of the

Federal Rules of Civil Procedure, will take the deposition upon oral examination of the following named

individual on the date and at the time and place indicated below. The deposition shall be recorded by

video and stenographic and/or sound means. The deposition will continue until completed.

     **NAME:**      **Michael Engelberg**
                      **75 Woodmere Blvd.**
                      **Woodsburgh, NY 11598**

     **DATE:**      **February 24, 2011**

     **TIME:**      **10:00 a.m.**

     **PLACE:**      **Allyn & Fortuna, LLP**
                      **200 Madison Avenue, Fifth Floor**
                      **New York, New York 10016**

     In addition, and pursuant to Rule 30(b)(2), the Deponent is requested to bring to the deposition all

documents responsive to the Request set forth on Schedule A that are in his or her possession, custody

and control.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 10th day of December, 2010.

Respectfully submitted,


By:     s / Raúl M. Arias
Raúl M. Arias
USDC-PR No. 209706
McCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue
Hato Rey, PR  00918
PO Box 364225
San Juan, PR 00936-4225
Telephone (787) 250-2604
Fax: (787) 759-2772
rma@mcvpr.com

2

**SCHEDULE A**
**SUBPOENA *DUCES TECUM*: SCHEDULE OF DOCUMENTS**

Pursuant to Rule 30(b)(2) of the Federal Rules of Civil Procedure, you are hereby requested to bring with you and produce for inspection and copying at the deposition the following:

**DEFINITIONS AND INSTRUCTIONS**

(a)     "Engelberg," "you," or "your" refer to Dr. Michael Engelberg and any of his employees, representatives, agents, attorneys, investigators, and consultants.

(b)     "Perr" refers to Eliezer Perr and any of his employees, representatives, agents, attorneys, investigators, and consultants.

(c)     "Mr. Ambush" refers to Joshua M. Ambush, Esquire, the Law Office of Joshua M. Ambush, LLC, and any of his employees, representatives, agents, attorneys, investigators, and consultants.

(d)     The "Center" refers to The American Center for Civil Justice, Inc. and any of its predecessors, successors, assigns or affiliates and any of its or their employees, representatives, officers, directors, agents, attorneys, investigators, and consultants.

(e)     The "*Franqui* Litigation" refers to the lawsuit known as *Franqui v. Syria, et al.,* Case No. 1:06-cv-0034(REW), in the United States District Court for the District of Columbia, including the submission of claims for wrongful death to the United States Department of State and the submission of claims for personal injury to the United States Foreign Claims Settlement Commission.

(f)     The "Claimants" refers to the individuals who purportedly have filed suit against Mr. Ambush in this action: Efrain Berganzo; Ruben Berganzo; Noemi Rodriguez Robles; Eliezer Rodriguez Robles; Angel M. Rodriguez Robles; Maria M. Rodriguez Robles; and Ruth D. Rodriguez Robles.

(g)     The "Claimant and Center Agreements" refers to writings that purport to be agreements between the Center and certain individuals with regard to the subject matter of the *Franqui* Litigation.

(h)     As used in this Request, the term "document" or "documents" means any or all writings, drawings, graphs, charts, photographs, recordings, discs, and other computer generated information

3

systems, or other graphic material or data compilation of any kind, variety, type, and character, however produced or reproduced and however stored or retrieved, to the full extent contemplated under Rules 34–45 of the Federal Rules of Civil Procedure, including the original, drafts, copies, and non-identical copies bearing notations or marks not found in other versions. Electronically stored information produced in response to this Request should be produced in its native format with all attachments and all original metadata

     (i)     As used in this Request, that a document "relates" to any given subject shall mean any document that constitutes, contains, embodies, identifies, states, refers to, deals with, or bears upon, directly or indirectly, the subject matter stated in the Request or facts pertinent to this case.

     (j)     As used in this Request, "possession," "custody," or "control" shall include the possession, custody, or control of the party to whom this Request is directed and its agents, employees, representatives, and, where not subject to a valid claim of privilege, its attorneys.

     (k)     As used in this Request, "communication" means any discussion or conversation, of any type, in person or by phone, and any written correspondence, or electronic mail communications, including all enclosures or attachments thereto.

     (l)     In the event that any document called for in this Request is not produced by virtue of an objection or claim of privilege, the Center shall affirmatively disclose such refusal to produce and, as to each such document withheld, identify the document by: (1) date; (2) author; (3) addresses and recipients of all copies; (4) a brief description of the type of document (*i.e.,* letter, memorandum, e-mail message, report, etc.); and (5) the specific objection or privilege asserted and the basis therefore.

     (m)     Pursuant to Rule 45(d)(i)(A) of the Federal Rules of Civil Procedure, documents produced for inspection in response to the Request shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in the Request.

     (n)     This Request is continuing in nature so as to require supplemental responses as additional documents come into the possession, custody, or control of the Center subsequent to any initial production or response.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents that constitute, refer, or relate to any oral, written, or electronic communications by or between the Center, Perr, Engelberg, and any of the Claimants or any of the Claimants' attorneys.

**REQUEST NO. 2:**

All documents that constitute, refer, or relate to oral, written, or electronic communications by or between the Center, Perr, or Engelberg and Javier Lopez-Perez, Esquire, Neal Sher, Esquire or David Efron, Esquire, or their respective law practices or any of their agents or employees or anyone acting for or on behalf of Mr. Lopez-Perez, Mr. Sher, or Mr. Efron.

**REQUEST NO. 3:**

All documents that constitute, refer, or relate to any agreement or other form of writing made or delivered by the Center, Perr, or Engelberg to any of the Claimants, Mr. Lopez-Perez, Mr. Sher or Mr. Efron or their respective law practices or any of their agents or employees or anyone else acting for or on their behalf.

**REQUEST NO. 4:**

All documents that constitute, refer, or relate to any writing received by the Center, Perr, or Engelberg from any of the Claimants, Mr. Lopez-Perez, Mr. Sher, or Mr. Efron or their respective law practices or any of their agents or employees or anyone else acting on their behalf.

**REQUEST NO. 5:**

All documents that constitute, refer, or relate to any payments made by the Center, Perr, or Engelberg to Mr. Lopez-Perez, Mr. Sher, or Mr. Efron, or their respective law practices or their agents or employees or anyone acting for or on their behalf.

**REQUEST NO. 6:**

All documents that constitute, refer, or relate to payments made by the Center to Mr. Ambush for or on account of legal services performed by him on behalf of the Claimants, as that term is defined in Paragraph (f) of the Definitions and Instructions, in connection with the *Franqui* Litigation or Mr. Ambush's representation of the Claimants in the submission of claims on behalf of the Claimants to the United States Department of State or the United States Foreign Claims Settlement Commission.

**REQUEST NO. 7:**

All documents that constitute, refer, or relate to payments made by the Center to Mr. Ambush for or on account of costs incurred in the prosecution of claims on behalf of the Claimants, as that term is defined in Paragraph (f) of the this Request, in connection with the the *Franqui* Litigation or claims submitted on behalf of the Claimants to the United States Department of State or the United States Foreign Claims Settlement Commission.

**REQUEST NO. 8:**

All documents that constitute, refer, or relate to payments or sums received by the Center, Perr, or Engelberg arising from or related to the claims of the Claimants, as that term is defined in Paragraph (f) of

the Definitions and Instructions, in connection with the *Franqui* Litigation or claims submitted on behalf of the Claimants to the United States Department of State or the United States Foreign Claims Settlement Commission.

**REQUEST NO. 9:**

All documents that constitute, refer, or relate to any Claimant and Center Agreements or Powers of Attorney by and between the Center, Perr, or Engelberg and any of the Claimants.

**REQUEST NO. 10:**

All documents that constitute, refer, or relate to communications by or among the Center, Perr, Engelberg, or Yededia Perr that refer or relate to the Claimants, as that term is defined in Paragraph (f) of the Definitions and Instructions, the subject matter of this action or Mr. Lopez-Perez, Mr. Sher, Mr. Efron, or their respective law practices, or anyone acting for or on their behalf.

**REQUEST NO. 11:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 2 of the Complaint filed against Joshua M. Ambush in the United States District Court for the District of Puerto Rico (Case No. 10-1044), a copy of which is attached as Exhibit A, including, but not limited to, the allegation that the Plaintiffs "were led to believe by Mr. Ambush, through misrepresentations and nondisclosure by him and/or his agents, on the need to sign a certain additional 'retainer agreement' for fees in excess of what the Estate's members had originally agreed to pay the American Center for Civil Justice . . . who had retained any was paying Mr. Ambush his legal fees for representing the Estates in the Libia action, a fact unbeknownst to plaintiffs."

**REQUEST NO. 12:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 17 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "the Center engaged defendant [Mr. Ambush] to help pursue litigation on behalf of the victims of the Lod Massacre."

**REQUEST NO. 13:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 17 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "Defendant was retained by the Center to, *inter alia*, travel to Puerto Rico to negotiate agreements between the Center and the Puerto Rican victims of the Lod Massacre."

**REQUEST NO. 14:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 18 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "[t]he Center paid Mr. Garcia $1,500.00 for locating the Libia action claimants."

**REQUEST NO. 15:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 20 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that the Center provided, "all expenses, costs, legal fees, and disbursements necessary to pursue the Libia litigation."

**REQUEST NO. 16:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 30 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "[t]he appearing plaintiffs were entitled to $10 million dollars for each Estate."

**REQUEST NO. 17:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 31 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that Mr. Ambush, "traveled to Puerto Rico and/or started communicating with the Plaintiffs."

**REQUEST NO. 18:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 32 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that Mr. Ambush, "demanded the execution of an additional 'retainer agreement' *ex post facto*."

**REQUEST NO. 19:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 33 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that Mr. Ambush, "expressed that the Center had not done anything on the Estate's behalf as per the Center Agreement."

**REQUEST NO. 20:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 33 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that Mr. Ambush, "also misrepresented to plaintiffs that payment of the compensation to the Estate was contingent upon their signature of the additional retainer agreement."

**REQUEST NO. 21:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 34 and 35 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that the Plaintiffs were, "under duress due to the dire financial condition of plaintiffs."

**REQUEST NO. 22:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 37 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "the appearing plaintiffs believed that signing the additional retainer agreement was a necessary and proper act necessary for receiving the compensation stemming from the Libia action."

**REQUEST NO. 23:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 41 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "plaintiffs became cognizant and realized that the appearing Estates were led to sign the additional retainer agreement without having the information necessary to reach a reasonable decision on the necessity and legality of the additional retainer agreement."

7

**REQUEST NO. 24:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 47 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "Plaintiffs would not have signed the additional retainer agreement if the Estates had been afforded all necessary information as stated above."

**REQUEST NO. 25:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 48 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "Plaintiffs signed the additional retainer agreements under deceit and duress."

**REQUEST NO. 26:**

All documents that constitute, refer, or relate to any of the statements set forth in paragraph 4 of the Second Declaration of Dr. Michael Engelberg, a copy of which is attached as Exhibit B, including, but not limited to, the statement that, "Rabbi Perr and I conceived of bringing litigation against the state sponsors of the Lod Airport Massacre and the Munich massacre on behalf of the terrorism victims as a result of our discussions with Mr. Vaughn Forrest and Yosef Bodansky, the director and assistant director and researcher of the Congressional Task Force on Counterterrorism and Unconventional Warfare, in and around 1997 to 1998."

**REQUEST NO. 27:**

All documents that constitute, refer, or relate to any of the statements set forth in paragraph 7 of the Second Declaration of Dr. Michael Engelberg, attached as Exhibit B, including, but not limited to, the statement that, "[Engelberg] directed Mr. Ambush to file the *Franqui* case just prior to the statute of limitations running out in order to preserve the rights of the *Franqui* Claimants."

**REQUEST NO. 28:**

All documents that constitute, refer, or relate to any of the statements set forth in paragraph 7 of the Second Declaration of Dr. Michael Engelberg, attached as Exhibit B, including, but not limited to, the statement that, "[t]he Center paid all expenses associated with the *Franqui* litigation."

**REQUEST NO. 29:**

All documents that constitute, refer, or relate to any of the statements set forth in paragraph 20 of the Second Declaration of Dr. Michael Engelberg, attached as Exhibit B, including, but not limited to, the statement that, "[s]everal Claimants retained Mr. Lopez-Perez to serve as their co-counsel in a suit against Ambush seeking disgorgement of $2 million in fraudulently extracted legal fees."

**REQUEST NO. 30:**

All documents that constitute, refer, or relate to any of the statements set forth in the Statement Under Penalty of Perjury dated December 9, 2009, signed by Eliezer Rodriguez Robles, Angel M. Rodriguez Robles, and Maria M. Rodriguez Robles, a copy of which is attached as Exhibit C.

**REQUEST NO. 31:**

All documents that constitute, refer, or relate to any of the circumstances leading up to the execution of Exhibit C.

8

**REQUEST NO. 32:**

All documents that constitute, refer, or relate to the Center's, including its agents, employees, and attorneys, involvement in the drafting, execution, or procurement of Exhibit C.

**REQUEST NO. 33:**

All documents that constitute, refer, or relate to any Spanish translations of Exhibit C.

**REQUEST NO. 34:**

All documents that constitute, refer, or relate to any of the statements set forth in the Statement Under Penalty of Perjury dated December 9, 2009, signed by Noemi Rodriguez Robles, a copy of which is attached as Exhibit D.

**REQUEST NO. 35:**

All documents that constitute, refer, or relate to any of the circumstances leading up to the execution of Exhibit D.

**REQUEST NO. 36:**

All documents that constitute, refer, or relate to the Center's, including its agents, employees, and attorneys, involvement in the drafting, execution, or procurement of Exhibit D.

**REQUEST NO. 37:**

All documents that constitute, refer, or relate to any Spanish translations of Exhibit D.

**REQUEST NO. 38:**

All documents that constitute, refer, or relate to any of the statements set forth in the Statement Under Penalty of Perjury dated December 7, 2009, signed by Ruth D. Rodriguez, a copy of which is attached as Exhibit E.

**REQUEST NO. 39:**

All documents that constitute, refer, or relate to any of the circumstances leading up to the execution of Exhibit E.

**REQUEST NO. 40:**

All documents that constitute, refer, or relate to the Center's, including its agents, employees, and attorneys, involvement in the drafting, execution, or procurement of Exhibit E.

**REQUEST NO. 41:**

All documents that constitute, refer, or relate to any Spanish translations of Exhibit E.

**REQUEST NO. 42:**

All documents that constitute, refer, or relate to any of the statements set forth in the Statement Under Penalty of Perjury, signed by Efrain Berganzo, a copy of which is attached as Exhibit F.

9

**REQUEST NO. 43:**

All documents that constitute, refer, or relate to any of the circumstances leading up to the execution of Exhibit F.

**REQUEST NO. 44:**

All documents that constitute, refer, or relate to the Center's, including its agents, employees, and attorneys, involvement in the drafting, execution, or procurement of Exhibit F.

**REQUEST NO. 45:**

All documents that constitute, refer, or relate to any Spanish translations of Exhibit F.

**REQUEST NO. 46:**

All documents that constitute, refer, or relate to any travel plans or arrangements for the Center, Engelberg, Perr, or anyone acting on their behalf or at their direction, to travel to Puerto for the time period of November 1, 2008 to the present for purposes of the *Franqui* Litigation, the Claimant and Center Agreements, or to locate or meet with any of the Claimants or plaintiffs in the above captioned lawsuit.

**REQUEST NO. 47:**

All documents that constitute, refer, or relate to any efforts by the Center to prepare documents, claims, or paperwork to submit to the United States State Department or the United States Foreign Claims Settlement Commission for the claims of the *Franqui* Claimants.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE ESTATE OF ANGEL BERGANZO COLON represented by Efrain and Ruben Berganzo; THE ESTATE OF ANTONIO RODRIGUEZ MORALES represented by Noemi Rodriguez Robles, Eliezer Rodriguez Robles, Angel M. Rodriguez Robles, Maria M. Rodriguez Robles and Ruth D. Rodriguez Robles | CIVIL NO. 10-1044 (GAG) |
| | DECLARATORY JUDGMENT OF NULLITY OF FEE AGREEMENT OBTAINED THROUGH MISREPRESENTATION AND DURESS; COLLECTION OF MONIES; DAMAGES |
| Plaintiffs | |
| v. | JURY TRIAL REQUESTED |
| JOSHUA M. AMBUSH | RECEIPT # 186920 AMOUNT: $350.00 |
| Defendant | JAN 25 2010 CASHIER'S SIGNATURE |



**COMPLAINT**

TO THE HONORABLE COURT:

COME NOW Plaintiffs through the undersigned attorney, and very respectfully state and pray as follows:

## I. INTRODUCTION AND NATURE OF THE ACTION

1.    Plaintiffs, claimants in the recently settled case styled *Franqui et al. v. Syria et al.*, Case No. 1:06-cv-00374 (RBW) (hereinafter the "Lybia action") before the United States District Court for the District of Columbia, file this cause of action for the recovery of TWO MILLION DOLLARS ($2,000,000.00) in attorney's fees wrongfully paid to defendant Joshua M. Ambush ("Mr. Ambush") by the appearing Estates.

2.    In a nutshell, Plaintiffs, who are lay persons from humble Puerto Rican families affected by the Lod Airport Massacre of May 30, 1972 (hereinafter the "Lod Massacre") in Tel Aviv, Israel, were led to believe by Mr. Ambush, through misrepresentations and nondisclosure by him and/or his agents, on the need to sign a certain additional "retainer agreement" for fees in

excess of what the Estate's members had originally agreed to pay the American Center for Civil

Justice (hereinafter the "Center"), who had retained and was paying Mr. Ambush his legal fees

for representing the Estates in the Lybia action, a fact unbeknownst to plaintiffs.

3.     This is an action for a declaratory judgment on the nullity of the retainer

agreement fraudulently executed under Mr. Ambush's and/or his agents' misrepresentations,

collection of monies and damages suffered as a result of Defendant's actions.

4.     This action is bought forth to insure that the Defendant returns the wrongfully

obtained attorney's fees and seeks an award for damages in tort.

## II.  JURISDICTION AND VENUE

5.     The Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. §§

1332 and to obtain the costs of suit, including reasonable attorney's fees.

6.     Venue is proper in the instant case as all claims arise from events that have

occurred and are occurring within the jurisdiction of this Court.

## III.  PARTIES TO THE ACTION

7.     Plaintiff Efrain Berganzo is a member of the Estate of Angel Berganzo Colon, a

claimant in the Lybia action. His address is P.O. Box 2043, Manati, Puerto Rico 00674, and his

telephone number (787) 209-0679.

8.     Plaintiff Ruben Berganzo is a member of the Estate of Angel Berganzo Colon, a

claimant in the Lybia action. His address is 1206 Weston, San Antonio, Texas 78251.

9.     Plaintiff Noemi Rodriguez Robles is a member of the Estate of Antonio Rodriguez

Morales, a claimant in the Lybia action. Her address is Urb. Ocean Front, Calle Pacifico #3461,

Vega Baja, Puerto Rico 00693.

10.     Plaintiff Eliezer Rodriguez Robles is a member of the Estate of Antonio

Rodriguez Morales, a claimant in the Lybia action.  His address is HC-33, Buzon 5242,

Marismilla, Dorado, Puerto Rico 00646.

11.   Plaintiff Angel M. Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. He lives in Barceloneta, Puerto Rico.

12.   Plaintiff Ruth D. Rodriguez is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. Her address is 923 Edgewater Cir., Eustis, Florida 32726.

13.   Plaintiff Maria M. Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. Her address is Apartado 1292, Manati, Puerto Rico.

14.   Defendant Joshua M. Ambush is an attorney and member of the Maryland and District of Columbia bars whose office is located at 1726 Reierstown Road, Suite 206, in Baltimore, Maryland.

### IV. FACTS IN SUPPORT OF THE COMPLAINT

15.   The Lod Massacre took place in the State of Israel on May 30, 1972. In that attack, Japanese Red Army terrorists opened heavy fire on a group of more than 150 Puerto Rican Americans arriving in the Lod Airport on a pilgrimage trip to Israel. Twenty-four people were killed and around 70 were wounded in the Massacre.

16.   Angel Berganzo Colon and Antonio Rodriguez Morales were among those killed in the Massacre.

17.   By information and / or belief, on or around 2001 the Center engaged defendant to help pursue litigation on behalf of the victims of the Lod Massacre. Defendant was retained by the Center to, *inter alia*, travel to Puerto Rico to negotiate agreements between the Center and the Puerto Rican victims of the Lod Massacre.

18.   Mr. Ambush in turn utilized his alleged "distant cousin", Mr. Leopoldo Garcia ("Mr. Garcia"), to assist the Center in finding potential claimants. The Center paid Mr. Garcia $1,500.00 for locating the Lybia action claimants.

19.     Acting as attorney for the Center, defendant and/or the agent Mr. Garcia signed with each Lybia action claimant, to include plaintiffs, a Claimant and Center Agreement (hereinafter the "Center Agreement").

20.     According to the Center Agreement, in consideration for the Center's provision of all expenses, costs, legal fees and disbursements necessary to pursue the Lybia litigation, and "[i]n further consideration of the ongoing efforts and services of the Center to assist other victims of oppression and to deter further acts of terrorism, and in order to promote the Center's ability to carry out its goals and purposes", the claimants pledged to pay the Center 20% of the net proceeds to be recovered from the litigation.

21.     Specifically, the Center Agreement stressed that "the total in the aggregate, including legal fees, expenditures and pledges is not to exceed 20% of the Claimants' recovery from the Litigation." (Emphasis in the original).

22.     On June 11, 2002, Plaintiff Efrain Berganzo Cruz, son of decedent Angel Berganzo Colon, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

23.     On July 23, 2002, Plaintiff Maria M. Rodriguez Robles, daughter of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

24.     On July 23, 2002, Plaintiff Eliezer Rodriguez Robles, son of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

25.     On July 23, 2002, Plaintiff Angel M. Rodriguez Robles, son of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

26.     On July 23, 2002, Plaintiff Ruth D. Rodriguez Robles, daughter of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

27.     On July 23, 2002, Plaintiff Noemi Rodriguez Robles, daughter of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

28.     On april 21, 2006, defendant filed the complaint in the Lybia action, styled *Franqui v. Syria*, No. 1:06-cv-00374 (RBW), in the United States District Court for the District of Columbia. On March 28, 2008, defendant filed an amended complaint.

29.     On August 14, 2008, Lybia entered into an agreement (the "Claims Settlement Agreement") whereby it would establish a fund in the amoun of $1.8 billion dollars, to be administered by the United States Department of State, to compensate victims of terrorist acts sponsored by Lybia.

30.     The appearing plaintiffs were entitled to $10 million dollars for each Estate.

31.     Suddenly thereafter defendant, who seldomly if ever communicated with plaintiffs during the years that the Lybia action was pending, traveled to Puerto Rico and/or started communicating with the plaintiffs.

32.     Specifically, defendant traveled to Puerto Rico during December of 2008 and, without disclosing that the Center had paid him for his work perfomed in the Lybia action,

demanded the execution of an additional "retainer agreement" *ex post facto*, where the Estates would have to pay him an additional 10% in fees over the 20% agreed upon according to the Center Agreement.

33.     Defendant not only did not disclose that the Center had paid him his legal fees for the work performed in the Lybia action, but expressed that the Center had not done anything on the Estates' behalf as per the Center Agreement.  Defendant also misrepresented to plaintiffs that payment of the compensation to the Estate was contingent on their signature of the additional retainer agreement.

34.     Under said misrepresentations, and under duress due to the dire financial condition of plaintiffs, on December 15, 2008, co-plaintiffs Noemi, Angel M., Ruth D., Eliezer, and Maria M. Rodriguez Robles, executed a "Retainer Agreement" retroactive to July 23, 2002, where the Rodriguez Estate agreed to authorize Mr. Ambush to terminate certain powers of attorney granted to the Center's Michael Engelberg to act on its behalf, and to pay defendant an additional 10% of whatever could be recovered pursuant to the Claims Settlement Agreement. This represented a payment of one million dollars per estate.

35.     Under said misrepresentations, and under duress due to the dire financial condition of plaintiffs, on December 15, 2008, co-plaintiff Efrain Berganzo Cruz executed a "Retainer Agreement" retroactive to July 23, 2002, where the Berganzo Estate agreed to authorize Mr. Ambush to terminate certain powers of attorney granted to the Center's Michael Engelberg to act on its behalf, and to pay defendant an additional 10% of whatever could be recovered pursuant to the Claims Settlement Agreement.  This represented a payment of one million dollars per estate.

36.     In fact, when questioned by a member of the Berganzo Estate about the additional 10% fee payment, defendant represented that (i) he was the originator of the idea that culminated in the Lybia action, and that (ii) he was not "protected or included" in the Center Agreement

although he was the "lead attorney". Defendant also advised the Berganzo Estate member not to discuss these matters with anybody else.

37.    Because of defendant's omissions and misrepresentations, the appearing plaintiffs believed that signing the additional retainer agreement was a necessary and proper act necessary for receiving the compensation stemming from the Lybia action. Plaintiffs were never told that the signing of the additional retainer agreement was not necessary in order to receive the awarded compensation.

38.    The appearing Estates were compensated with $10 million dollars each. Of said amount, the Estates received $7 million dollars after the originally agreed 20% was paid to the Center, and one million additional dollars retained by Mr. Ambush by virtue of the additional retainer agreement.

39.    Plaintiffs were alerted about the fact that the execution of the additional retainer agreement was not necessary for receiving compensation through a newspaper advertisement published by the Center through attorney Javier Lopez acting as an agent of the Center, in the El Nuevo Dia newspaper.

40.    Through said agent the plaintiffs were informed of a certain ongoing litigation before the United States District Court for the District of Columbia styled *American Center for Civil Justice v. Joshua M. Ambush, Esq.*, Case No. 1:09-cv-00233 (PLF) where the Center is seeking declaratory judgment and damages for, *inter alia*, the execution of the additional retainer agreements herein described.

41.    Upon examining the underlying facts supporting said complaint, plaintiffs became cognizant and realized that the appearing Estates were led to sign the additional retainer agreement without having the information necessary to reach a reasonable decision on the necessity and legality of the additional retainer agreement.

## V. FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT ON NULLITY OF ADDITIONAL RETAINER
## AGREEMENT

41.     The averments contained in paragraphs 1 through 40 of this Complaint are incorporated herein by reference.

42.     Article 1207 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3372, provides that "[t]he contracting parties can establish the agreements, clauses and conditions that they deem convenient, as long as they are not against the laws, the morals, or the public order." (Translation supplied).

43.     Article 1217 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3404, provides that the consent of a party to a contract will be null if it was given through mistake, violence, intimidation or deceit.

44.     Article 1221 of the Puerto Rico Civil Code provides that deceit is configured "when with words or insidious machinations of one of the contracting parties, the other is induced to celebrate an agreement that, without them, would not have done." (Translation supplied).

45.     Plaintiffs signed the additional retainer agreement believing *inter alia* that its execution was a condition precedent for payment of the compensation stemming from the Lybia action, when it was not.

46.     In addition, plaintiffs signed the additional retainer agreement without full disclosure by Mr. Ambush that he was compensated by the Center for his work on behalf of the Estates, and that he was an agent acting for the Center.

47.     Plaintiffs would not have signed the additional retainer agreement if the Estates had been afforded all the necessary information as stated above.

48.     Plaintiffs signed the additional retainer agreements under deceit and duress.

49.     Plaintiffs request a declaratory judgment from the Honorable Court declaring the nullity of the additional retainer agreement, and the return of the $2 million dollars

## II. SECOND CLAIM FOR RELIEF
## COLLECTION OF MONIES AND DAMAGES

50.     The averments contained in paragraphs 1 through 49 of this Complaint are incorporated herein by reference.

51.     The nullity of the additional retainer agreement obliges defendant to effect restitution of the amounts obtained through the additional retainer agreement, plus interest. Article 1255 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3514.

52.     In addition, since defendant acted deceitfully in the performance of his obligations, damages should be awarded. Article 1054 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3018; Article 1060 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3024.

WHEREFORE Plaintiffs very respectfully requests the entry of judgment in its favor as follows:

(a)     In connection with the First Claim for Relief, a declaration that the additional retainer agreement is null, as it was executed through deceit, and the corresponding return to the Estates of $1 million dollars per Estate;
(b)     In connection with the Second Claim for Relief, the award of damages to include interest on the amounts obtained by defendant through said deceit;
(c)     For such other and further relief that this Honorable Court may deem just in addition to the costs and disbursements of this action.

In San Juan, Puerto Rico, this 25th day of January, 2010.

Javier López-Pérez
USDC-PR #221212
The Hato Rey Center Suite 440
268 Ponce de León Ave.
San Juan, Puerto Rico 00918
Tel. (787) 754-1391 / Fax (787) 754-6019
lopezperezlaw@gmail.com

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| The Estate of Angel Bergenzo, et al. | Joshua M. Ambush |

| (b) County of Residence of First Listed Plaintiff  Puerto Rico | County of Residence of First Listed Defendant  Maryland |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

(c) Attorney's (Firm Name, Address, and Telephone Number)
Javier Lopez-Perez, Esq., The Hato Rey Center Suite 440, 268 Ponce de Leon Ave., Hato Rey, Puerto Rico  00918

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C.A. Sec. 1332

Brief description of cause:
Nullity of Fee Agreement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
2,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  1/25/2010

SIGNATURE OF ATTORNEY OF RECORD  _Javier Lopez - Pe_

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

## CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

Attorney Name (Last, First, MI):   Lopez-Perez, Javier

USDC-PR Bar Number:   221212

Email Address:   lopezperezlaw@gmail.com

1.   Title (caption) of the Case (provide only the names of the <u>first</u> party on <u>each</u> side):

    Plaintiff:   The Estate of Angel Berganzo

    Defendant:   Joshua M. Ambush

2.   Indicate the category to which this case belongs:

    ☒ Ordinary Civil Case

    ☐ Social Security

    ☐ Banking

    ☐ Injunction

3.   Indicate the title and number of related cases (if any).

4.   Has a prior action between the same parties and based on the same claim ever been filed before this Court?

    ☐ Yes

    ☒ No

5.   Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

    ☐ Yes

    ☒ No

6.   Does this case question the constitutionality of a state statute? (See, Fed.R.Civ. P. 24)

    ☐ Yes

    ☒ No

Date Submitted:   1/22/10

rev. Dec. 2009

 

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Puerto Rico

| | |
|---|---|
| The Estate of Angel Berganzo Colon, et al. | ) |
| ——————————————— | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No.  10-1044 (GAG) |
| Joshua M. Ambush | ) |
| ——————————————— | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Joshua M. Ambush
a/k/a Maxwell D. Ambush
Office: 1726 Reisterstown Road, Suite 206
Baltimore, Maryland

Home: 3205 Nerak Rd., Pikesville, MD 21208-5818

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Javier Lopez-Perez, Esq.
The Hato Rey Center  Suite 440
268 Ponce de Leon Ave.
San Juan, Puerto Rico  00918

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.  10-1044 (GAG)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____
on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____     _____
                                                          *Server's signature*

                                             _____
                                                          *Printed name and title*


                                             _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE AMERICAN CENTER FOR CIVIL JUSTICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:09-cv-00233 (PLF) |
| v. | ) |
| | ) ELECTRONICALLY FILED |
| JOSHUA M. AMBUSH, Esq., | ) |
| | ) |
| Defendant. | ) |

SECOND DECLARATION OF DR. MICHAEL ENGELBERG

I, Dr. Michael Engelberg, hereby state the following:

1.     I have served on the Board of Directors of The American Center for Civil

Justice (the "Center" or "ACCJ") since its inception in 1999. I also served on the Board

of the Center's predecessor, the Raoul Wallenberg Center for Civil Justice, since its

formation in 1996 until its name was amended to the ACCJ in 1999. I served as

executive vice president of the Center from 2001 through 2004, and I currently serve as

its president. I make this Declaration in support of the Center's Reply in support of its

Motion for Preliminary Injunction in this action, based on my personal knowledge.

2.     I have reviewed the Declaration of Joshua M. Ambush in this action and

submit this Declaration to dispute certain factual assertions in Mr. Ambush's Declaration.

For example, in ¶ 2 of his Declaration, Mr. Ambush asserts that he "acted as attorney for

individuals whose lawsuits were sponsored by [the Center]" in certain listed cases before

1

this Court, including *Heiser, et al. v. Islamic Republic of Iran, et al.; Campuzano, et al. v. Islamic Republic of Iran, et al.; Collett v. Socialist People's Libyan Arab Jamahiriya, et al.; and Welch, et al. v. Islamic Republic of Iran, et al.* I held power-of-attorney for each of the claimants in those actions, and at no time did I or the claimants in those actions engage Mr. Ambush to serve as those claimants' attorney. Mr. Ambush observed some of the proceedings in those cases and was tasked by the Center to perform certain information-gathering tasks, but he never served as a legal representative of the plaintiffs in those actions. On behalf of the claimants in those cases, I engaged other attorneys and firms to serve as their legal counsel.

3.     In ¶ 9 of his unredacted Declaration, filed under seal, Mr. Ambush states that he personally "initially conceived of bringing a suit on behalf of victims of a terrorist attack that occurred on May 31, 1972 at the Lod Airport (the "Lod Airport Massacre"). I conducted the research and engaged in the planning required to file such a suit [and] presented the case to ACCJ for financing...." This is a fabrication. Paragraph 6 of Mr. Ambush's unredacted Declaration makes similar assertions and further states that Mr. Ambush never in any way represented the Center as an attorney in any aspect of the *Franqui* case, and that the Center did not direct Mr. Ambush in any aspect of the case. These statements are likewise untrue and falsely claim the work and ideas of myself and Rabbi Elie Perr of the Center as Mr. Ambush's own work and ideas.

4.     Rabbi Perr and I conceived of bringing litigation against the state sponsors of the Lod Airport Massacre and the Munich massacre on behalf of the terrorism victims as a result of our discussions with Mr. Vaughn Forrest and Yossef Bodansky, the director and assistant director and researcher of the Congressional Task Force on

2

Counterterrorism and Unconventional Warfare, in and around 1997 to 1998. Around that same time, Rabbi Perr contacted David Halevy and other investigators and intelligence agents to provide evidence that Syria and Libya were responsible and liable for these attacks. Mr. Ambush did not begin work on the Lod Massacre cases until 2000, when he graduated law school and was admitted to the Bar. Mr. Ambush was a family friend of Rabbi Perr, and it was hoped that he could assist the Center while the Center helped him establish his practice. At my instruction, he was retained to prepare and gather information on the Lod Massacre in anticipation of bringing suit on behalf of victims. The Center tasked Mr. Ambush with traveling to Puerto Rico to negotiate agreements between the Center and Puerto Rican victims of the Lod Massacre. It turned out that a distant cousin of Mr. Ambush's, Leopold Garcia, was the retired fire department chief of San Juan, Puerto Rico and was able to assist the Center. The Center paid Mr. Garcia $1,500.00 for locating the Franqui Claimants.

5.     In 2001, the Center paid a total of $85,622.00 to Mr. Ambush. Prior to Mr. Ambush's trip to Puerto Rico on or about June 12, 2001, in which he signed the Claimant Agreements with the Franqui Claimants, the Center made four payments to Mr. Ambush as follows: on March 26, 2001, the Center paid Mr. Ambush $10,000.00 (with check #1057); on April 30, 2001, the Center paid Mr. Ambush $10,000.00 (with check #1069); on June 8, 2001, the Center paid Mr. Ambush $135.00 (with check #1074); and on June 8, 2001, the Center paid Mr. Ambush $8,000.00 (with check #1076). These payments were for work performed by Mr. Ambush, on behalf of the Center and at the Center's direction, primarily in connection with preparing the Lod Massacre litigation. Because Mr. Ambush was not an employee of the Center, the Center has never

3

issued him a W-2. Mr. Ambush has advised us that no 1099 Form need be issued for payments to an attorney, so we followed his advice in that regard. The Center's payments to Mr. Ambush for legal services are reported on the Center's Form 990 Financial Statements.

6.    I personally have finalized all compensation arrangements with attorneys for claimants whose litigation the Center has funded. No promises of a bonus or percentage of the recovery were made to Mr. Ambush by the Center. In other cases, the Center has from time to time agreed to compensate counsel for successful results, with some form of contingency or bonus arrangement. All such agreements must be approved by both Rabbi Perr and myself and set forth in writing. As the attorney-in-fact for the claimants and as representative of the ACCJ, I engaged all attorneys and defined, after discussion with other Center representatives, what that compensation would be. In the *Franqui* case, Mr. Ambush did not seek payment from the Center other than his hourly rate until after learning that millions of dollars would be paid to the Franqui Claimants and, pursuant to the Claimant Agreements, to the Center as a result of the U.S. State Department's establishment of a settlement fund for victims of Libyan-sponsored terrorism.

7.    I directed Mr. Ambush to file the *Franqui* case just prior to the statute of limitations running out in order to preserve the rights of the Franqui Claimants. As the case required more complex briefing to respond to Libya's motion to dismiss, I engaged, on behalf of the Franqui Claimants, Paul Gaston to act as lead attorney in the case. Mr. Gaston is a graduate of Yale Law School who had previously represented terrorism victims in several similar cases funded by the Center. As a courtesy to Mr. Ambush and

4

in appreciation of his loyalty to the ACCJ, I allowed him to remain as co-counsel, but Mr. Gaston performed the bulk of the representation. Mr. Ambush assisted Mr. Gaston, not vice versa. In fact, Mr. Gaston on December 11, 2009 wrote to the State Department that he was the attorney authorized to act on behalf of the claimants as the liaison to the State Department for the application the funds. The Center has paid all expenses associated with the *Franqui* litigation. My understanding is that Mr. Ambush has not obtained funding from any other source besides the Center for the *Franqui* litigation. However, on information and belief, Mr. Ambush may have sought to negotiate for additional compensation from at least some of the Franqui Claimants, beyond the 20% contingency fee owed to the Center.

8.   Mr. Ambush admits in his Declaration that, before this dispute arose, I directed him to arrange for the settlement proceeds to go to a different escrow account than the one which Mr. Ambush controlled and that he did not comply with my directions. It is untrue that the escrow account I identified was one controlled by me, and we did not discuss escrow accounts in August 2008, as he asserts. Rather, the date of this discussion was early December 2008, after the State Department advised that application for the funds could be submitted and before this dispute arose. I instructed Mr. Ambush to have the funds deposited in an escrow account controlled by Mr. Gaston, the lead attorney in the action who also owed a duty to the claimants to safeguard their property. As I was indisputably the attorney-in-fact for the claimants, Mr. Ambush had an obligation to follow my instruction in that regard, regardless of whether he now claims he represented the Center or the Claimants or both. He did not; and he continued to

5

disregard my written instructions of December 10 and December 15, 2008. On each of those occasions, I was still the power of attorney for the Franqui Claimants.

9.    Mr. Ambush's actions in orchestrating the revocations of some of the Franqui Claimants' powers of attorney and in refusing, in purported representation of the Claimants, to cooperate with the Center in accordance with the Claimant Agreements, has harmed the Center. His actions have caused the ACCJ to expend thousands of hours and large sums of money protecting its reputation and its rights against Mr. Ambush. Mr. Ambush has refused on request from Rabbi Perr for close to one year to give the Center the files that belong to it, including a full set of copies of the Claimant Agreements, and he has similarly refused for more than five months my requests for the same, despite the fact that I was serving as the power of attorney for the Franqui Claimants when I first requested those files. Mr. Ambush has also refused to provide the Center contact information for the Claimants, so the ACCJ is unable to contact the Claimants.

10.    The Center has spent over ten years developing the Lod Massacre litigation and the basis for recovery from Libya, expending thousands of hours and thousands of dollars on behalf of the victims of the Lod Massacre. The Center desires to contact the Claimants in order to reestablish the good will between the Center and the Claimants, explain how it has disbursed funds, which the Claimants will be obliged to reimburse pursuant to the Claimant Agreements, and to protect its reputation. I believe that the Claimants would not have signed revocations of the powers of attorney unless Mr. Ambush made derogatory statements to the Claimants about the Center's ability to effectively direct efforts to obtain a recovery for them.

6

11.    My concern about Mr. Ambush's actions is compounded by his signing his December 17, 2008 letter to me and the Center as "Joshua 'McDermott' Ambush." Mr. Ambush's legal name is now Joshua M. Ambush.  In or about late 2000, he changed his name from Maxwell Ambush.  His insertion of "McDermott" as his middle name in the signature block was a clear reference to John J. McDermott, an attorney who had previously represented terrorism victims in litigation funded by the Center.  At that time, McDermott had attempted to circumvent his agreement with the Center to increase his share of recoveries in an unrelated case.  The Center had engaged Mr. Ambush in early 2003 to assist it (and me personally) in preparing a Bar Counsel complaint against Mr. McDermott.  The gravamen of that complaint, in addition to concerns about the quality of Mr. McDermott's representation, was Mr. McDermott's attempts to overstate his role in certain representations in order to claim a portion of the Center's recovery. We did not ultimately submit the complaint to Bar Counsel, but Mr. Ambush was familiar with the Center's concerns due to his role in preparing the draft complaint. Mr. Ambush also represented the Center in 2007 in a motion to intervene filed under seal in this Court in the case *Steen, et al., v. Islamic Republic of Iran, et al.*, Civ. No. 00-3037 (CKK), in which the Center sought to protect its right to receive funds pursuant to a Claimant Agreement with the plaintiff, Mr. Steen, after Mr. McDermott orchestrated Mr. Steen's revocation of my power of attorney.  In the motion to intervene filed by Mr. Ambush, he argued that "Counsel McDermott has a conflict of interest" because he was hired by the Center to file and bring the Steen case to trial and then sought to interfere with the Center's relationship with Mr. Steen.  It is obvious that Mr. Ambush has borrowed a page from McDermott's playbook in his current efforts to secure a share of

7

the recovery in the Franqui case. Mr. Ambush's use of the name "McDermott" in reference to himself in his December 17, 2008, can only be understood as Mr. Ambush's acknowledgment, albeit through an attempt at humor, that he was engaging in the same tactics used by Mr. McDermott. This outlandish admission, in my opinion, neatly summarizes Mr. Ambush's breach of his duty of loyalty to the Center.

I have read this Declaration, and I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _12th_ day of April, 2009:


_____
Dr. Michael Engelberg

8

# EXHIBIT C

Case 1:00-cv-00200-LEF-BAK   Document 04-1   Filed 01/11/10   Page 1 of 3

STATEMENT UNDER PENALTY OF PERJURY

1.      We, Eliezer, Maria M. and Angel M. Rodriguez Robles, are members of the Estate of

Antonio Rodriguez Morales, a Claimant in the case styled *Franqui v. Syria*, Case No. 06-CV-734

(RBW).

2.      We are cognizant of the fact that under the Claimant and Center Agreement

("Agreement") that we signed in or around 2002, the Center would retain and pay the lawyers who

would pursue the aforementioned case on behalf of the Claimants.

3.      According to the Agreement, the Estate would only pay the Center 20% of the net

proceeds recovered from the litigation, and that the total in the aggregate, including legal fees,

expenditures and pledges which would never exceed 20% of Claimants' recovery from the litigation.

4.      Before signing the new Retainer Agreement with Joshua M. Ambush ("Mr. Ambush"),

we were not cognizant of the fact that Mr. Ambush was being compensated for his legal work in the

litigation by the Center.  In addition, we were led to believe that payment of the compensation was

contingent on our signing the Retainer Agreement.

5.      Therefore, we did not have the necessary information which would have allowed us to

reach a decision regarding the necessity and reasonableness of the "new" Retainer Agreement.

In San Juan, Puerto Rico, this December 9, 2009.


_Eliezer Rodriguez Robles_                              _Maria M. Rodriguez Robles_
Eliezer Rodriguez Robles                                Maria M. Rodriguez Robles


_Angel M. Rodriguez Robles_
Angel M. Rodriguez Robles

# EXHIBIT D

## STATEMENT UNDER PENALTY OF PERJURY

1.      I, Noemi Rodriguez Robles, am a member of the Estate of Antonio Rodriguez Morales, a Claimant in the case styled *Franqui v. Syria*, Case No. 06-CV-734 (RBW).

2.      I am cognizant of the fact that under the Claimant and Center Agreement ("Agreement") signed with the American Center for Civil Justice, Inc. ("Center") on July 23, 2002, the Center would retain and pay the lawyers who would pursue the aforementioned case on behalf of the Claimants.

3.      According to the Agreement, the Estate would only pay the Center 20% of the net proceeds recovered from the litigation, and that the total in the aggregate, including legal fees, expenditures and pledges which would never exceed 20% of Claimants' recovery from the litigation.

4.      Before signing the new Retainer Agreement with Joshua M. Ambush ("Mr. Ambush"), I was not cognizant of the fact that Mr. Ambush was being compensated for his legal work in the litigation by the Center. We were led to believe that payment of the compensation was contingent on our signing the Retainer Agreement.

5.      Therefore, I did not have the necessary information which would have allowed me to reach a decision regarding the necessity and reasonableness of the "new" Retainer Agreement.

In San Juan, Puerto Rico, this December 9, 2009.

*Naemi Rodriguez Robles*
Noemi Rodriguez Robles

**REDACTED**

# EXHIBIT E

Case 1:09-cv-00268-PLF-DAR   Document 54-1   Filed 01/11/10   Page 5 of 10

## STATEMENT UNDER PENALTY OF PERJURY

1.      I, Ruth D. Rodriguez, am a member of the Estate of Antonio Rodriguez Morales, a Claimant in the case styled *Franqui v. Syria*, Case No. 06-CV-734 (RBW).

2.      I am cognizant of the fact that under the Claimant and Center Agreement ("Agreement") signed with the American Center for Civil Justice, Inc. ("Center") on June 11, 2002, the Center would retain and pay the lawyers who would pursue the aforementioned case on behalf of the Claimants.

3.      According to the Agreement, the Estate would only pay the Center 20% of the net proceeds recovered from the litigation, and that the total in the aggregate, including legal fees, expenditures and pledges which would never exceed 20% of Claimants' recovery from the litigation.

4.      Before signing the new Retainer Agreement with Joshua M. Ambush ("Mr. Ambush"), I was not cognizant of the fact that Mr. Ambush was being compensated for his legal work in the litigation by the Center.

5.      Therefore, I did not have the necessary information which would have allowed me to reach a decision regarding the necessity and reasonableness of the "new" Retainer Agreement.

December 7, 2009.

Ruth D. Rodriguez

*Ruth D. Rodriguez*

**REDACTED**

# EXHIBIT F

## STATEMENT UNDER PENALTY OF PERJURY

1.    I, Efrain Berganzo, am a member of the Estate of Angel Berganzo Colon, a claimant in the case styled *Franqui v. Syria*, Case No. 06-CV-734 (RBW).

2.    I am cognizant of the Claimant and Center Agreement ("Agreement") signed in behalf of the Estate by Efrain Berganzo Cruz with the American Center for Civil Justice, Inc. ("Center") on June 11, 2002. According to said Agreement, the Center would retain and pay the lawyers who would pursue the aforementioned case on behalf of the Claimants.

3.    According to the Agreement, the Estate would only pay the Center 20% of the net proceeds recovered from the litigation, and that the total in the aggregate, including legal fees, expenditures and pledges which would never exceed 20% of Claimants' recovery from the litigation.

4.    After Joshua M. Ambush ("Mr. Ambush") represented to the Estate that he would not be compensated for his work unless we signed an additional retainer agreement, on December 15, 2008 I signed a Retainer Agreement where the Estate agreed to pay an additional 10% of the net proceeds to Joshua M. Ambush ("Mr. Ambush").

5.    The Estate was not cognizant, and Mr. Ambush never revealed to us, that the Center had retained him to be counsel for the aforementioned litigation, and that he was being compensated for his legal work in the litigation by the Center.

6.    The Retainer Agreement was signed under duress, under false representations, and without the necessary information which would have allowed the Estate to reach a reasonable, well-informed decision regarding the necessity and reasonableness of the "new" Retainer Agreement.

Efrain Berganzo

REDACTED

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   MAR 0 2 2011   ★

BROOKLYN OFFICE

GLEESON, J.

MISC 11 0148

# ATTACHMENT B

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | |
|---|---|
| THE ESTATE OF ÁNGEL BERGANZO COLÓN | ) |
| *Plaintiff* | ) |
| v. | ) |
| JOSHUA M. AMBUSH | ) |
| *Defendant* | ) |

Civil Action No.   10-1044 (GAG)

(If the action is pending in another district, state where:
District of Puerto Rico            )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Eliezer Perr, 1646 41st Street, Brooklyn, NY  11218

✔ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Allyn & Fortuna, LLP<br>200 Madison Avenue, Fifth Floor, New York, NY  10016 | Date and Time:<br>02/25/2011 10:00 am |
|---|---|

The deposition will be recorded by this method:  court reporter

✔ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
All documents requested in the attached Notice of Deposition Duces Tecum and Schedule A attached thereto.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: *12/10/2010*

CLERK OF COURT

OR *[signature]*

_____        _____
Signature of Clerk or Deputy Clerk                Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Joshua M. Ambush
_____, who issues or requests this subpoena, are:
Henry O. Freese-Souffront, USDC-PR No. 215502, McCONNELL VALDÉS LLC, 270 Muñoz Rivera Avenue, Hato Rey, PR  00918, Email: hf@mcvpr.com, Phone:  787-250-5810

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  10-1044 (GAG)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

    $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                          *Server's signature*

                                 _____
                                          *Printed name and title*

                                 _____
                                          *Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE ESTATE OF ÁNGEL BERGANZO COLÓN represented by Efraín and Rubén Berganzo; THE ESTATE OF ANTONIO RODRÍGUEZ MORALES represented by Noemí Rodríguez Robles, Eliezer Rodríguez Robles, Ángel M. Rodríguez Robles, María M. Rodríguez Robles and Ruth D. Rodríguez Robles, | CIVIL NO. 10-1044 (GAG) |
| Plaintiffs, | |
| v. | |
| JOSHUA M. AMBUSH, | |
| Defendant. | |

## NOTICE OF DEPOSITION *DUCES TECUM*

Joshua M. Ambush, by his undersigned counsel and pursuant to Rules 30, 34 and 45 of the Federal Rules of Civil Procedure, will take the deposition upon oral examination of the following named individual on the date and at the time and place indicated below. The deposition shall be recorded by video and stenographic and/or sound means. The deposition will continue until completed.

| | |
|---|---|
| NAME: | **Eliezer Perr** |
| | **1646 41st Street** |
| | **Brooklyn, NY 11218** |
| DATE: | **February 25, 2011** |
| TIME: | **10:00 a.m.** |
| PLACE: | **Allyn & Fortuna, LLP** |
| | **200 Madison Avenue, Fifth Floor** |
| | **New York, New York 10016** |

In addition, and pursuant to Rule 30(b)(2), the Deponent is requested to bring to the deposition all documents responsive to the Request set forth on Schedule A that are in his or her possession, custody and control.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 10th day of December, 2010.

*Respectfully submitted,*

By:     s / Raúl M. Arias
Raúl M. Arias
USDC-PR No. 209706
McCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue
Hato Rey, PR  00918
PO Box 364225
San Juan, PR 00936-4225
Telephone (787) 250-2604
Fax: (787) 759-2772
rma@mcvpr.com

2

**SCHEDULE A**
**SUBPOENA *DUCES TECUM*: SCHEDULE OF DOCUMENTS**

Pursuant to Rule 30(b)(2) of the Federal Rules of Civil Procedure, you are hereby requested to

bring with you and produce for inspection and copying at the deposition the following:

**DEFINITIONS AND INSTRUCTIONS**

(a)     "Perr," "you," and "your" refer to Eliezer Perr and any of his employees, representatives,

agents, attorneys, investigators, and consultants.

(b)     "Mr. Ambush" refers to Joshua M. Ambush, Esquire, the Law Office of Joshua M.

Ambush, LLC, and any of his employees, representatives, agents, attorneys, investigators, and

consultants.

(c)     "Engelberg" refers to Dr. Michael Engelberg and any of his employees, representatives,

agents, attorneys, investigators, and consultants.

(d)     The "Center" refers to The American Center for Civil Justice, Inc. and any of its

predecessors, successors, assigns or affiliates and any of its or their employees, representatives, officers,

directors, agents, attorneys, investigators, and consultants.

(e)     The "*Franqui* Litigation" refers to the lawsuit known as *Franqui v. Syria, et al.*, Case No.

1:06-cv-0034(REW), in the United States District Court for the District of Columbia, including the

submission of claims for wrongful death to the United States Department of State and the submission of

claims for personal injury to the United States Foreign Claims Settlement Commission.

(f)     The "Claimants" refers to the individuals who purportedly have filed suit against Mr.

Ambush in this action:  Efrain Berganzo; Ruben Berganzo; Noemi Rodriguez Robles; Eliezer Rodriguez

Robles; Angel M. Rodriguez Robles; Maria M. Rodriguez Robles; and Ruth D. Rodriguez Robles.

(g)     The "Claimant and Center Agreements" refers to writings that purport to be agreements

between the Center and certain individuals with regard to the subject matter of the *Franqui* Litigation.

(h)     As used in this Request, the term "document" or "documents" means any or all writings,

drawings, graphs, charts, photographs, recordings, discs, and other computer generated information

3

systems, or other graphic material or data compilation of any kind, variety, type, and character, however produced or reproduced and however stored or retrieved, to the full extent contemplated under Rules 34–45 of the Federal Rules of Civil Procedure, including the original, drafts, copies, and non-identical copies bearing notations or marks not found in other versions. Electronically stored information produced in response to this Request should be produced in its native format with all attachments and all original metadata

(i)     As used in this Request, that a document "relates" to any given subject shall mean any document that constitutes, contains, embodies, identifies, states, refers to, deals with, or bears upon, directly or indirectly, the subject matter stated in the Request or facts pertinent to this case.

(j)     As used in this Request, "possession," "custody," or "control" shall include the possession, custody, or control of the party to whom this Request is directed and its agents, employees, representatives, and, where not subject to a valid claim of privilege, its attorneys.

(k)     As used in this Request, "communication" means any discussion or conversation, of any type, in person or by phone, and any written correspondence, or electronic mail communications, including all enclosures or attachments thereto.

(l)     In the event that any document called for in this Request is not produced by virtue of an objection or claim of privilege, the Center shall affirmatively disclose such refusal to produce and, as to each such document withheld, identify the document by: (1) date; (2) author; (3) addresses and recipients of all copies; (4) a brief description of the type of document (*i.e.,* letter, memorandum, e-mail message, report, etc.); and (5) the specific objection or privilege asserted and the basis therefore.

(m)     Pursuant to Rule 45(d)(i)(A) of the Federal Rules of Civil Procedure, documents produced for inspection in response to the Request shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in the Request.

(n)     This Request is continuing in nature so as to require supplemental responses as additional documents come into the possession, custody, or control of the Center subsequent to any initial production or response.

4

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents that constitute, refer, or relate to any oral, written, or electronic communications by or between the Center, Perr, Engelberg, and any of the Claimants or any of the Claimants' attorneys.

**REQUEST NO. 2:**

All documents that constitute, refer, or relate to oral, written, or electronic communications by or between the Center, Perr, or Engelberg and Javier Lopez-Perez, Esquire, Neal Sher, Esquire or David Efron, Esquire, or their respective law practices or any of their agents or employees or anyone acting for or on behalf of Mr. Lopez-Perez, Mr. Sher, or Mr. Efron.

**REQUEST NO. 3:**

All documents that constitute, refer, or relate to any agreement or other form of writing made or delivered by the Center, Perr, or Engelberg to any of the Claimants, Mr. Lopez-Perez, Mr. Sher or Mr. Efron or their respective law practices or any of their agents or employees or anyone else acting for or on their behalf.

**REQUEST NO. 4:**

All documents that constitute, refer, or relate to any writing received by the Center, Perr, or Engelberg from any of the Claimants, Mr. Lopez-Perez, Mr. Sher, or Mr. Efron or their respective law practices or any of their agents or employees or anyone else acting on their behalf.

**REQUEST NO. 5:**

All documents that constitute, refer, or relate to any payments made by the Center, Perr, or Engelberg to Mr. Lopez-Perez, Mr. Sher, or Mr. Efron, or their respective law practices or their agents or employees or anyone acting for or on their behalf.

**REQUEST NO. 6:**

All documents that constitute, refer, or relate to payments made by the Center to Mr. Ambush for or on account of legal services performed by him on behalf of the Claimants, as that term is defined in Paragraph (f) of the Definitions and Instructions, in connection with the *Franqui* Litigation or Mr. Ambush's representation of the Claimants in the submission of claims on behalf of the Claimants to the United States Department of State or the United States Foreign Claims Settlement Commission.

**REQUEST NO. 7:**

All documents that constitute, refer, or relate to payments made by the Center to Mr. Ambush for or on account of costs incurred in the prosecution of claims on behalf of the Claimants, as that term is defined in Paragraph (f) of the this Request, in connection with the the *Franqui* Litigation or claims submitted on behalf of the Claimants to the United States Department of State or the United States Foreign Claims Settlement Commission.

**REQUEST NO. 8:**

All documents that constitute, refer, or relate to payments or sums received by the Center, Perr, or Engelberg arising from or related to the claims of the Claimants, as that term is defined in Paragraph (f) of

the Definitions and Instructions, in connection with the *Franqui* Litigation or claims submitted on behalf of the Claimants to the United States Department of State or the United States Foreign Claims Settlement Commission.

**REQUEST NO. 9:**

All documents that constitute, refer, or relate to any Claimant and Center Agreements or Powers of Attorney by and between the Center, Perr, or Engelberg and any of the Claimants.

**REQUEST NO. 10:**

All documents that constitute, refer, or relate to communications by or among the Center, Perr, Engelberg, or Yededia Perr that refer or relate to the Claimants, as that term is defined in Paragraph (f) of the Definitions and Instructions, the subject matter of this action or Mr. Lopez-Perez, Mr. Sher, Mr. Efron, or their respective law practices, or anyone acting for or on their behalf.

**REQUEST NO. 11:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 2 of the Complaint filed against Joshua M. Ambush in the United States District Court for the District of Puerto Rico (Case No. 10-1044), a copy of which is attached as Exhibit A, including, but not limited to, the allegation that the Plaintiffs "were led to believe by Mr. Ambush, through misrepresentations and nondisclosure by him and/or his agents, on the need to sign a certain additional 'retainer agreement' for fees in excess of what the Estate's members had originally agreed to pay the American Center for Civil Justice . . . who had retained any was paying Mr. Ambush his legal fees for representing the Estates in the Libia action, a fact unbeknownst to plaintiffs."

**REQUEST NO. 12:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 17 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "the Center engaged defendant [Mr. Ambush] to help pursue litigation on behalf of the victims of the Lod Massacre."

**REQUEST NO. 13:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 17 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "Defendant was retained by the Center to, *inter alia*, travel to Puerto Rico to negotiate agreements between the Center and the Puerto Rican victims of the Lod Massacre."

**REQUEST NO. 14:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 18 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "[t]he Center paid Mr. Garcia $1,500.00 for locating the Libia action claimants."

**REQUEST NO. 15:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 20 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that the Center provided, "all expenses, costs, legal fees, and disbursements necessary to pursue the Libia litigation."

**REQUEST NO. 16:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 30 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "[t]he appearing plaintiffs were entitled to $10 million dollars for each Estate."

**REQUEST NO. 17:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 31 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that Mr. Ambush, "traveled to Puerto Rico and/or started communicating with the Plaintiffs."

**REQUEST NO. 18:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 32 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that Mr. Ambush, "demanded the execution of an additional 'retainer agreement' *ex post facto*."

**REQUEST NO. 19:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 33 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that Mr. Ambush, "expressed that the Center had not done anything on the Estate's behalf as per the Center Agreement."

**REQUEST NO. 20:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 33 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that Mr. Ambush, "also misrepresented to plaintiffs that payment of the compensation to the Estate was contingent upon their signature of the additional retainer agreement."

**REQUEST NO. 21:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 34 and 35 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that the Plaintiffs were, "under duress due to the dire financial condition of plaintiffs."

**REQUEST NO. 22:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 37 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "the appearing plaintiffs believed that signing the additional retainer agreement was a necessary and proper act necessary for receiving the compensation stemming from the Libia action."

**REQUEST NO. 23:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 41 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "plaintiffs became cognizant and realized that the appearing Estates were led to sign the additional retainer agreement without having the information necessary to reach a reasonable decision on the necessity and legality of the additional retainer agreement."

**REQUEST NO. 24:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 47 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "Plaintiffs would not have signed the additional retainer agreement if the Estates had been afforded all necessary information as stated above."

**REQUEST NO. 25:**

All documents that constitute, refer, or relate to any of the allegations set forth in paragraph 48 of the Complaint, attached as Exhibit A, including, but not limited to, the allegation that, "Plaintiffs signed the additional retainer agreements under deceit and duress."

**REQUEST NO. 26:**

All documents that constitute, refer, or relate to any of the statements set forth in paragraph 4 of the Second Declaration of Dr. Michael Engelberg, a copy of which is attached as Exhibit B, including, but not limited to, the statement that, "Rabbi Perr and I conceived of bringing litigation against the state sponsors of the Lod Airport Massacre and the Munich massacre on behalf of the terrorism victims as a result of our discussions with Mr. Vaughn Forrest and Yosef Bodansky, the director and assistant director and researcher of the Congressional Task Force on Counterterrorism and Unconventional Warfare, in and around 1997 to 1998."

**REQUEST NO. 27:**

All documents that constitute, refer, or relate to any of the statements set forth in paragraph 7 of the Second Declaration of Dr. Michael Engelberg, attached as Exhibit B, including, but not limited to, the statement that, "[Engelberg] directed Mr. Ambush to file the *Franqui* case just prior to the statute of limitations running out in order to preserve the rights of the *Franqui* Claimants."

**REQUEST NO. 28:**

All documents that constitute, refer, or relate to any of the statements set forth in paragraph 7 of the Second Declaration of Dr. Michael Engelberg, attached as Exhibit B, including, but not limited to, the statement that, "[t]he Center paid all expenses associated with the *Franqui* litigation."

**REQUEST NO. 29:**

All documents that constitute, refer, or relate to any of the statements set forth in paragraph 20 of the Second Declaration of Dr. Michael Engelberg, attached as Exhibit B, including, but not limited to, the statement that, "[s]everal Claimants retained Mr. Lopez-Perez to serve as their co-counsel in a suit against Ambush seeking disgorgement of $2 million in fraudulently extracted legal fees."

**REQUEST NO. 30:**

All documents that constitute, refer, or relate to any of the statements set forth in the Statement Under Penalty of Perjury dated December 9, 2009, signed by Eliezer Rodriguez Robles, Angel M. Rodriguez Robles, and Maria M. Rodriguez Robles, a copy of which is attached as Exhibit C.

**REQUEST NO. 31:**

All documents that constitute, refer, or relate to any of the circumstances leading up to the execution of Exhibit C.

**REQUEST NO. 32:**

All documents that constitute, refer, or relate to the Center's, including its agents, employees, and attorneys, involvement in the drafting, execution, or procurement of Exhibit C.

**REQUEST NO. 33:**

All documents that constitute, refer, or relate to any Spanish translations of Exhibit C.

**REQUEST NO. 34:**

All documents that constitute, refer, or relate to any of the statements set forth in the Statement Under Penalty of Perjury dated December 9, 2009, signed by Noemi Rodriguez Robles, a copy of which is attached as Exhibit D.

**REQUEST NO. 35:**

All documents that constitute, refer, or relate to any of the circumstances leading up to the execution of Exhibit D.

**REQUEST NO. 36:**

All documents that constitute, refer, or relate to the Center's, including its agents, employees, and attorneys, involvement in the drafting, execution, or procurement of Exhibit D.

**REQUEST NO. 37:**

All documents that constitute, refer, or relate to any Spanish translations of Exhibit D.

**REQUEST NO. 38:**

All documents that constitute, refer, or relate to any of the statements set forth in the Statement Under Penalty of Perjury dated December 7, 2009, signed by Ruth D. Rodriguez, a copy of which is attached as Exhibit E.

**REQUEST NO. 39:**

All documents that constitute, refer, or relate to any of the circumstances leading up to the execution of Exhibit E.

**REQUEST NO. 40:**

All documents that constitute, refer, or relate to the Center's, including its agents, employees, and attorneys, involvement in the drafting, execution, or procurement of Exhibit E.

**REQUEST NO. 41:**

All documents that constitute, refer, or relate to any Spanish translations of Exhibit E.

**REQUEST NO. 42:**

All documents that constitute, refer, or relate to any of the statements set forth in the Statement Under Penalty of Perjury, signed by Efrain Berganzo, a copy of which is attached as Exhibit F.

**REQUEST NO. 43:**

All documents that constitute, refer, or relate to any of the circumstances leading up to the execution of Exhibit F.

**REQUEST NO. 44:**

All documents that constitute, refer, or relate to the Center's, including its agents, employees, and attorneys, involvement in the drafting, execution, or procurement of Exhibit F.

**REQUEST NO. 45:**

All documents that constitute, refer, or relate to any Spanish translations of Exhibit F.

**REQUEST NO. 46:**

All documents that constitute, refer, or relate to any travel plans or arrangements for the Center, Engelberg, Perr, or anyone acting on their behalf or at their direction, to travel to Puerto for the time period of November 1, 2008 to the present for purposes of the *Franqui* Litigation, the Claimant and Center Agreements, or to locate or meet with any of the Claimants or plaintiffs in the above captioned lawsuit.

**REQUEST NO. 47:**

All documents that constitute, refer, or relate to any efforts by the Center to prepare documents, claims, or paperwork to submit to the United States State Department or the United States Foreign Claims Settlement Commission for the claims of the *Franqui* Claimants.

# EXHIBIT A



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE ESTATE OF ANGEL BERGANZO COLON represented by Efrain and Ruben Berganzo; THE ESTATE OF ANTONIO RODRIGUEZ MORALES represented by Noemi Rodriguez Robles, Eliezer Rodriguez Robles, Angel M. Rodriguez Robles, Maria M. Rodriguez Robles and Ruth D. Rodriguez Robles<br><br>Plaintiffs<br><br>v.<br><br>JOSHUA M. AMBUSH<br><br>Defendant | CIVIL NO. 10-1044 (GAG)<br><br>DECLARATORY JUDGMENT OF NULLITY OF FEE AGREEMENT OBTAINED THROUGH MISREPRESENTATION AND DURESS; COLLECTION OF MONIES; DAMAGES<br><br>JURY TRIAL REQUESTED<br><br>RECEIPT # 186920<br>AMOUNT: $ 350.00<br><br>JAN 25 2010<br><br>CASHIER'S SIGNATURE |

**COMPLAINT**

TO THE HONORABLE COURT:

COME NOW Plaintiffs through the undersigned attorney, and very respectfully state and pray as follows:

## I. INTRODUCTION AND NATURE OF THE ACTION

1.      Plaintiffs, claimants in the recently settled case styled *Franqui et al. v. Syria et al.*, Case No. 1:06-cv-00374 (RBW) (hereinafter the "Lybia action") before the United States District Court for the District of Columbia, file this cause of action for the recovery of TWO MILLION DOLLARS ($2,000,000.00) in attorney's fees wrongfully paid to defendant Joshua M. Ambush ("Mr. Ambush") by the appearing Estates.

2.      In a nutshell, Plaintiffs, who are lay persons from humble Puerto Rican families affected by the Lod Airport Massacre of May 30, 1972 (hereinafter the "Lod Massacre") in Tel Aviv, Israel, were led to believe by Mr. Ambush, through misrepresentations and nondisclosure by him and/or his agents, on the need to sign a certain additional "retainer agreement" for fees in

excess of what the Estate's members had originally agreed to pay the American Center for Civil Justice (hereinafter the "Center"), who had retained and was paying Mr. Ambush his legal fees for representing the Estates in the Lybia action, a fact unbeknownst to plaintiffs.

3.     This is an action for a declaratory judgment on the nullity of the retainer agreement fraudulently executed under Mr. Ambush's and/or his agents' misrepresentations, collection of monies and damages suffered as a result of Defendant's actions.

4.     This action is bought forth to insure that the Defendant returns the wrongfully obtained attorney's fees and seeks an award for damages in tort.

## II. JURISDICTION AND VENUE

5.     The Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and to obtain the costs of suit, including reasonable attorney's fees.

6.     Venue is proper in the instant case as all claims arise from events that have occurred and are occurring within the jurisdiction of this Court.

## III. PARTIES TO THE ACTION

7.     Plaintiff Efrain Berganzo is a member of the Estate of Angel Berganzo Colon, a claimant in the Lybia action. His address is P.O. Box 2043, Manati, Puerto Rico  00674, and his telephone number (787) 209-0679.

8.     Plaintiff Ruben Berganzo is a member of the Estate of Angel Berganzo Colon, a claimant in the Lybia action.  His address is 1206 Weston, San Antonio, Texas 78251.

9.     Plaintiff Noemi Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. Her address is Urb. Ocean Front, Calle Pacifico #3461, Vega Baja, Puerto Rico  00693.

10.     Plaintiff Eliezer Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action.   His address is HC-33, Buzon 5242, Marismilla, Dorado, Puerto Rico 00646.

11.    Plaintiff Angel M. Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. He lives in Barceloneta, Puerto Rico.

12.    Plaintiff Ruth D. Rodriguez is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. Her address is 923 Edgewater Cir., Eustis, Florida 32726.

13.    Plaintiff Maria M. Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. Her address is Apartado 1292, Manati, Puerto Rico.

14.    Defendant Joshua M. Ambush is an attorney and member of the Maryland and District of Columbia bars whose office is located at 1726 Reierstown Road, Suite 206, in Baltimore, Maryland.

### IV. FACTS IN SUPPORT OF THE COMPLAINT

15.    The Lod Massacre took place in the State of Israel on May 30, 1972. In that attack, Japanese Red Army terrorists opened heavy fire on a group of more than 150 Puerto Rican Americans arriving in the Lod Airport on a pilgrimage trip to Israel. Twenty-four people were killed and around 70 were wounded in the Massacre.

16.    Angel Berganzo Colon and Antonio Rodriguez Morales were among those killed in the Massacre.

17.    By information and / or belief, on or around 2001 the Center engaged defendant to help pursue litigation on behalf of the victims of the Lod Massacre. Defendant was retained by the Center to, *inter alia,* travel to Puerto Rico to negotiate agreements between the Center and the Puerto Rican victims of the Lod Massacre.

18.    Mr. Ambush in turn utilized his alleged "distant cousin", Mr. Leopoldo Garcia ("Mr. Garcia"), to assist the Center in finding potential claimants. The Center paid Mr. Garcia $1,500.00 for locating the Lybia action claimants.

19. Acting as attorney for the Center, defendant and/or the agent Mr. Garcia signed with each Lybia action claimant, to include plaintiffs, a Claimant and Center Agreement (hereinafter the "Center Agreement").

20. According to the Center Agreement, in consideration for the Center's provision of all expenses, costs, legal fees and disbursements necessary to pursue the Lybia litigation, and "[i]n further consideration of the ongoing efforts and services of the Center to assist other victims of oppression and to deter further acts of terrorism, and in order to promote the Center's ability to carry out its goals and purposes", the claimants pledged to pay the Center 20% of the net proceeds to be recovered from the litigation.

21. Specifically, the Center Agreement stressed that "the total in the aggregate, including legal fees, expenditures and pledges is **not** to exceed 20% of the Claimants' recovery from the Litigation." (Emphasis in the original).

22. On June 11, 2002, Plaintiff Efrain Berganzo Cruz, son of decedent Angel Berganzo Colon, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

23. On July 23, 2002, Plaintiff Maria M. Rodriguez Robles, daughter of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

24. On July 23, 2002, Plaintiff Eliezer Rodriguez Robles, son of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

25.    On July 23, 2002, Plaintiff Angel M. Rodriguez Robles, son of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

26.    On July 23, 2002, Plaintiff Ruth D. Rodriguez Robles, daughter of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

27.    On July 23, 2002, Plaintiff Noemi Rodriguez Robles, daughter of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

28.    On april 21, 2006, defendant filed the complaint in the Lybia action, styled *Franqui v. Syria*, No. 1:06-cv-00374 (RBW), in the United States District Court for the District of Columbia. On March 28, 2008, defendant filed an amended complaint.

29.    On August 14, 2008, Lybia entered into an agreement (the "Claims Settlement Agreement") whereby it would establish a fund in the amoun of $1.8 billion dollars, to be administered by the United States Department of State, to compensate victims of terrorist acts sponsored by Lybia.

30.    The appearing plaintiffs were entitled to $10 million dollars for each Estate.

31.    Suddenly thereafter defendant, who seldomly if ever communicated with plaintiffs during the years that the Lybia action was pending, traveled to Puerto Rico and/or started communicating with the plaintiffs.

32.    Specifically, defendant traveled to Puerto Rico during December of 2008 and, without disclosing that the Center had paid him for his work perfomed in the Lybia action,

demanded the execution of an additional "retainer agreement" *ex post facto*, where the Estates would have to pay him an additional 10% in fees over the 20% agreed upon according to the Center Agreement.

33.    Defendant not only did not disclose that the Center had paid him his legal fees for the work perfomed in the Lybia action, but expressed that the Center had not done anything on the Estates' behalf as per the Center Agreement. Defendant also misrepresented to plaintiffs that payment of the compensation to the Estate was contingent on their signature of the additional retainer agreement.

34.    Under said misrepresentations, and under duress due to the dire financial condition of plaintiffs, on December 15, 2008, co-plaintiffs Noemi, Angel M., Ruth D., Eliezer, and Maria M. Rodriguez Robles, executed a "Retainer Agreement" retroactive to July 23, 2002, where the Rodriguez Estate agreed to authorize Mr. Ambush to terminate certain powers of attorney granted to the Center's Michael Engelberg to act on its behalf, and to pay defendant an additional 10% of whatever could be recovered pursuant to the Claims Settlement Agreement. This represented a payment of one million dollars per estate.

35.    Under said misrepresentations, and under duress due to the dire financial condition of plaintiffs, on December 15, 2008, co-plaintiff Efrain Berganzo Cruz executed a "Retainer Agreement" retroactive to July 23, 2002, where the Berganzo Estate agreed to authorize Mr. Ambush to terminate certain powers of attorney granted to the Center's Michael Engelberg to act on its behalf, and to pay defendant an additional 10% of whatever could be recovered pursuant to the Claims Settlement Agreement. This represented a payment of one million dollars per estate.

36.    In fact, when questioned by a member of the Berganzo Estate about the additional 10% fee payment, defendant represented that (i) he was the originator of the idea that culminated in the Lybia action, and that (ii) he was not "protected or included" in the Center Agreement

although he was the "lead attorney". Defendant also advised the Berganzo Estate member not to discuss these matters with anybody else.

37.     Because of defendant's omissions and misrepresentations, the appearing plaintiffs believed that signing the additional retainer agreement was a necessary and proper act necessary for receiving the compensation stemming from the Lybia action. Plaintiffs were never told that the signing of the additional retainer agreement was not necessary in order to receive the awarded compensation.

38.     The appearing Estates were compensated with $10 million dollars each. Of said amount, the Estates received $7 million dollars after the originally agreed 20% was paid to the Center, and one million additional dollars retained by Mr. Ambush by virtue of the additional retainer agreement.

39.     Plaintiffs were alerted about the fact that the execution of the additional retainer agreement was not necessary for receiving compensation through a newspaper advertisement published by the Center through attorney Javier Lopez acting as an agent of the Center, in the El Nuevo Dia newspaper.

40.     Through said agent the plaintiffs were informed of a certain ongoing litigation before the United States District Court for the District of Columbia styled *American Center for Civil Justice v. Joshua M. Ambush, Esq.*, Case No. 1:09-cv-00233 (PLF) where the Center is seeking declaratory judgment and damages for, *inter alia*, the execution of the additional retainer agreements herein described.

41.     Upon examining the underlying facts supporting said complaint, plaintiffs became cognizant and realized that the appearing Estates were led to sign the additional retainer agreement without having the information necessary to reach a reasonable decision on the necessity and legality of the additional retainer agreement.

## V. FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT ON NULLITY OF ADDITIONAL RETAINER
## AGREEMENT

41.     The averments contained in paragraphs 1 through 40 of this Complaint are incorporated herein by reference.

42.     Article 1207 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3372, provides that "[t]he contracting parties can establish the agreements, clauses and conditions that they deem convenient, as long as they are not against the laws, the morals, or the public order." (Translation supplied).

43.     Article 1217 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3404, provides that the consent of a party to a contract will be null if it was given through mistake, violence, intimidation or deceit.

44.     Article 1221 of the Puerto Rico Civil Code provides that deceit is configured "when with words or insidious machinations of one of the contracting parties, the other is induced to celebrate an agreement that, without them, would not have done." (Translation supplied).

45.     Plaintiffs signed the additional retainer agreement believing *inter alia* that its execution was a condition precedent for payment of the compensation stemming from the Lybia action, when it was not.

46.     In addition, plaintiffs signed the additional retainer agreement without full disclosure by Mr. Ambush that he was compensated by the Center for his work on behalf of the Estates, and that he was an agent acting for the Center.

47.     Plaintiffs would not have signed the additional retainer agreement if the Estates had been afforded all the necessary information as stated above.

48.     Plaintiffs signed the additional retainer agreements under deceit and duress.

49.     Plaintiffs request a declaratory judgment from the Honorable Court declaring the nullity of the additional retainer agreement, and the return of the $2 million dollars

## II. SECOND CLAIM FOR RELIEF
## COLLECTION OF MONIES AND DAMAGES

50.     The averments contained in paragraphs 1 through 49 of this Complaint are incorporated herein by reference.

51.     The nullity of the additional retainer agreement obliges defendant to effect restitution of the amounts obtained through the additional retainer agreement, plus interest. Article 1255 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3514.

52.     In addition, since defendant acted deceitfully in the performance of his obligations, damages should be awarded.  Article 1054 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3018; Article 1060 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3024.

WHEREFORE Plaintiffs very respectfully requests the entry of judgment in its favor as follows:

(a)     In connection with the First Claim for Relief, a declaration that the additional retainer agreement is null, as it was executed through deceit, and the corresponding return to the Estates of $1 million dollars per Estate;

(b)     In connection with the Second Claim for Relief, the award of damages to include interest on the amounts obtained by defendant through said deceit;

(c)     For such other and further relief that this Honorable Court may deem just in addition to the costs and disbursements of this action.

In San Juan, Puerto Rico, this 25th day of January, 2010.

Javier López-Pérez
USDC-PR #221212
The Hato Rey Center Suite 440
268 Ponce de León Ave.
San Juan, Puerto Rico 00918
Tel. (787) 754-1391 / Fax (787) 754-6019
lopezperezlaw@gmail.com

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
The Estate of Angel Berganzo, et al.

## DEFENDANTS
Joshua M. Ambush

**(b)** County of Residence of First Listed Plaintiff   Puerto Rico
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Maryland
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Javier Lopez-Perez, Esq., The Hato Rey Center Suite 440, 268 Ponce de Leon Ave., Hato Rey, Puerto Rico  00918

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

[Standard JS 44 nature of suit checklist categories: CONTRACT, TORTS (PERSONAL INJURY, PERSONAL PROPERTY), REAL PROPERTY, CIVIL RIGHTS, PRISONER PETITIONS, FORFEITURE/PENALTY, LABOR, PROPERTY RIGHTS, BANKRUPTCY, FEDERAL TAX SUITS, IMMIGRATION, OTHER STATUTES]

☒ 190 Contract

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C.A. Sec. 1332
Brief description of cause:
Nullity of Fee Agreement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $  2,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____   DOCKET NUMBER _____

DATE  1/25/2010   SIGNATURE OF ATTORNEY OF RECORD _____

### FOR OFFICE USE ONLY
RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

## CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

Attorney Name (Last, First, MI):   Lopez-Perez, Javier

USDC-PR Bar Number:   221212

Email Address:   lopezperezlaw@gmail.com

1.   Title (caption) of the Case (provide only the names of the first party on each side):

   Plaintiff:   The Estate of Angel Berganzo

   Defendant:   Joshua M. Ambush

2.   Indicate the category to which this case belongs:

   ☒ Ordinary Civil Case

   ☐ Social Security

   ☐ Banking

   ☐ Injunction

3.   Indicate the title and number of related cases (if any).

4.   Has a prior action between the same parties and based on the same claim ever been filed before this Court?

   ☐ Yes
   ☒ No

5.   Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

   ☐ Yes
   ☒ No

6.   Does this case question the constitutionality of a state statute? (See, Fed.R.Civ. P. 24)

   ☐ Yes
   ☒ No

Date Submitted:   1/22/10

rev. Dec. 2009

 

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Puerto Rico

The Estate of Angel Berganzo Colon, et al.

_____
*Plaintiff*

v.                                                    Civil Action No.  10-1044 (GAG)

Joshua M. Ambush

_____
*Defendant*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Joshua M. Ambush
a/k/a Maxwell D. Ambush
Office: 1728 Reisterstown Road, Suite 206
Baltimore, Maryland

Home: 3205 Nerak Rd., Pikesville, MD 21208-5618

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are:   Javier Lopez-Perez, Esq.
The Hato Rey Center Suite 440
268 Ponce de Leon Ave.
San Juan, Puerto Rico  00918

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.   10-1044 (GAG)

# PROOF OF SERVICE

## *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

    ☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ☐ I returned the summons unexecuted because _____ ; or

    ☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____          _____

                                                      *Server's signature*

                         _____

                                      *Printed name and title*

                         _____

                                       *Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE AMERICAN CENTER FOR CIVIL JUSTICE, | ) ) | |
| Plaintiff, | ) ) | Case No. 1:09-cv-00233 (PLF) |
| v. | ) ) | ELECTRONICALLY FILED |
| JOSHUA M. AMBUSH, Esq., | ) ) | |
| Defendant. | ) ) ) | |

SECOND DECLARATION OF DR. MICHAEL ENGELBERG

I, Dr. Michael Engelberg, hereby state the following:

1.      I have served on the Board of Directors of The American Center for Civil

Justice (the "Center" or "ACCJ") since its inception in 1999.  I also served on the Board

of the Center's predecessor, the Raoul Wallenberg Center for Civil Justice, since its

formation in 1996 until its name was amended to the ACCJ in 1999.  I served as

executive vice president of the Center from 2001 through 2004, and I currently serve as

its president.  I make this Declaration in support of the Center's Reply in support of its

Motion for Preliminary Injunction in this action, based on my personal knowledge.

2.      I have reviewed the Declaration of Joshua M. Ambush in this action and

submit this Declaration to dispute certain factual assertions in Mr. Ambush's Declaration.

For example, in ¶ 2 of his Declaration, Mr. Ambush asserts that he "acted as attorney for

individuals whose lawsuits were sponsored by [the Center]" in certain listed cases before

1

this Court, including *Heiser, et al. v. Islamic Republic of Iran, et al.; Campuzano, et al. v. Islamic Republic of Iran, et al.; Collett v. Socialist People's Libyan Arab Jamahiriya, et al.;* and *Welch, et al. v. Islamic Republic of Iran, et al.* I held power-of-attorney for each of the claimants in those actions, and at no time did I or the claimants in those actions engage Mr. Ambush to serve as those claimants' attorney. Mr. Ambush observed some of the proceedings in those cases and was tasked by the Center to perform certain information-gathering tasks, but he never served as a legal representative of the plaintiffs in those actions. On behalf of the claimants in those cases, I engaged other attorneys and firms to serve as their legal counsel.

3.      In ¶ 9 of his unredacted Declaration, filed under seal, Mr. Ambush states that he personally "initially conceived of bringing a suit on behalf of victims of a terrorist attack that occurred on May 31, 1972 at the Lod Airport (the "Lod Airport Massacre"). I conducted the research and engaged in the planning required to file such a suit [and] presented the case to ACCJ for financing...." This is a fabrication. Paragraph 6 of Mr. Ambush's unredacted Declaration makes similar assertions and further states that Mr. Ambush never in any way represented the Center as an attorney in any aspect of the *Franqui* case, and that the Center did not direct Mr. Ambush in any aspect of the case. These statements are likewise untrue and falsely claim the work and ideas of myself and Rabbi Elie Perr of the Center as Mr. Ambush's own work and ideas.

4.      Rabbi Perr and I conceived of bringing litigation against the state sponsors of the Lod Airport Massacre and the Munich massacre on behalf of the terrorism victims as a result of our discussions with Mr. Vaughn Forrest and Yossef Bodansky, the director and assistant director and researcher of the Congressional Task Force on

2

Counterterrorism and Unconventional Warfare, in and around 1997 to 1998. Around that same time, Rabbi Perr contacted David Halevy and other investigators and intelligence agents to provide evidence that Syria and Libya were responsible and liable for these attacks. Mr. Ambush did not begin work on the Lod Massacre cases until 2000, when he graduated law school and was admitted to the Bar. Mr. Ambush was a family friend of Rabbi Perr, and it was hoped that he could assist the Center while the Center helped him establish his practice. At my instruction, he was retained to prepare and gather information on the Lod Massacre in anticipation of bringing suit on behalf of victims. The Center tasked Mr. Ambush with traveling to Puerto Rico to negotiate agreements between the Center and Puerto Rican victims of the Lod Massacre. It turned out that a distant cousin of Mr. Ambush's, Leopold Garcia, was the retired fire department chief of San Juan, Puerto Rico and was able to assist the Center. The Center paid Mr. Garcia $1,500.00 for locating the Franqui Claimants.

5.      In 2001, the Center paid a total of $85,622.00 to Mr. Ambush. Prior to Mr. Ambush's trip to Puerto Rico on or about June 12, 2001, in which he signed the Claimant Agreements with the Franqui Claimants, the Center made four payments to Mr. Ambush as follows: on March 26, 2001, the Center paid Mr. Ambush $10,000.00 (with check #1057); on April 30, 2001, the Center paid Mr. Ambush $10,000.00 (with check #1069); on June 8, 2001, the Center paid Mr. Ambush $135.00 (with check #1074); and on June 8, 2001, the Center paid Mr. Ambush $8,000.00 (with check #1076). These payments were for work performed by Mr. Ambush, on behalf of the Center and at the Center's direction, primarily in connection with preparing the Lod Massacre litigation. Because Mr. Ambush was not an employee of the Center, the Center has never

3

issued him a W-2. Mr. Ambush has advised us that no 1099 Form need be issued for

payments to an attorney, so we followed his advice in that regard.  The Center's

payments to Mr. Ambush for legal services are reported on the Center's Form 990

Financial Statements.

        6.     I personally have finalized all compensation arrangements with attorneys

for claimants whose litigation the Center has funded.  No promises of a bonus or

percentage of the recovery were made to Mr. Ambush by the Center. In other cases, the

Center has from time to time agreed to compensate counsel for successful results, with

some form of contingency or bonus arrangement.  All such agreements must be approved

by both Rabbi Perr and myself and set forth in writing.  As the attorney-in-fact for the

claimants and as representative of the ACCJ, I engaged all attorneys and defined, after

discussion with other Center representatives, what that compensation would be.  In the

*Franqui* case, Mr. Ambush did not seek payment from the Center other than his hourly

rate until after learning that millions of dollars would be paid to the Franqui Claimants

and, pursuant to the Claimant Agreements, to the Center as a result of the U.S. State

Department's establishment of a settlement fund for victims of Libyan-sponsored

terrorism.

        7.     I directed Mr. Ambush to file the *Franqui* case just prior to the statute of

limitations running out in order to preserve the rights of the Franqui Claimants.  As the

case required more complex briefing to respond to Libya's motion to dismiss, I engaged,

on behalf of the Franqui Claimants, Paul Gaston to act as lead attorney in the case.

Mr. Gaston is a graduate of Yale Law School who had previously represented terrorism

victims in several similar cases funded by the Center.  As a courtesy to Mr. Ambush and

4

in appreciation of his loyalty to the ACCJ, I allowed him to remain as co-counsel, but Mr. Gaston performed the bulk of the representation. Mr. Ambush assisted Mr. Gaston, not vice versa. In fact, Mr. Gaston on December 11, 2009 wrote to the State Department *that he was the attorney authorized to act on behalf of the claimants as the liaison to the* State Department for the application the funds. The Center has paid all expenses associated with the *Franqui* litigation. My understanding is that Mr. Ambush has not obtained funding from any other source besides the Center for the *Franqui* litigation. However, on information and belief, Mr. Ambush may have sought to negotiate for additional compensation from at least some of the Franqui Claimants, beyond the 20% contingency fee owed to the Center.

8.    Mr. Ambush admits in his Declaration that, before this dispute arose, I directed him to arrange for the settlement proceeds to go to a different escrow account than the one which Mr. Ambush controlled and that he did not comply with my directions. It is untrue that the escrow account I identified was one controlled by me, and we did not discuss escrow accounts in August 2008, as he asserts. Rather, the date of this discussion was early December 2008, after the State Department advised that application for the funds could be submitted and before this dispute arose. I instructed Mr. Ambush to have the funds deposited in an escrow account controlled by Mr. Gaston, the lead attorney in the action who also owed a duty to the claimants to safeguard their property. As I was indisputably the attorney-in-fact for the claimants, Mr. Ambush had an obligation to follow my instruction in that regard, regardless of whether he now claims he represented the Center or the Claimants or both. He did not; and he continued to

5

disregard my written instructions of December 10 and December 15, 2008. On each of those occasions, I was still the power of attorney for the Franqui Claimants.

9.     Mr. Ambush's actions in orchestrating the revocations of some of the Franqui Claimants' powers of attorney and in refusing, in purported representation of the *Claimants*, to cooperate with the Center in accordance with the Claimant Agreements, has harmed the Center.  His actions have caused the ACCJ to expend thousands of hours and large sums of money protecting its reputation and its rights against Mr. Ambush. Mr. Ambush has refused on request from Rabbi Perr for close to one year to give the Center the files that belong to it, including a full set of copies of the Claimant Agreements, and he has similarly refused for more than five months my requests for the same, despite the fact that I was serving as the power of attorney for the Franqui Claimants when I first requested those files. Mr. Ambush has also refused to provide the Center contact information for the Claimants, so the ACCJ is unable to contact the Claimants.

10.     The Center has spent over ten years developing the Lod Massacre litigation and the basis for recovery from Libya, expending thousands of hours and thousands of dollars on behalf of the victims of the Lod Massacre.  The Center desires to contact the Claimants in order to reestablish the good will between the Center and the Claimants, explain how it has disbursed funds, which the Claimants will be obliged to reimburse pursuant to the Claimant Agreements, and to protect its reputation. I believe that the Claimants would not have signed revocations of the powers of attorney unless Mr. Ambush made derogatory statements to the Claimants about the Center's ability to effectively direct efforts to obtain a recovery for them.

6

11.     My concern about Mr. Ambush's actions is compounded by his signing his December 17, 2008 letter to me and the Center as "Joshua 'McDermott' Ambush." Mr. Ambush's legal name is now Joshua M. Ambush.  In or about late 2000, he changed his name from Maxwell Ambush.  His insertion of "McDermott" as his middle name in the signature block was a clear reference to John J. McDermott, an attorney who had previously represented terrorism victims in litigation funded by the Center.  At that time, McDermott had attempted to circumvent his agreement with the Center to increase his share of recoveries in an unrelated case.  The Center had engaged Mr. Ambush in early 2003 to assist it (and me personally) in preparing a Bar Counsel complaint against Mr. McDermott.  The gravamen of that complaint, in addition to concerns about the quality of Mr. McDermott's representation, was Mr. McDermott's attempts to overstate his role in certain representations in order to claim a portion of the Center's recovery. We did not ultimately submit the complaint to Bar Counsel, but Mr. Ambush was familiar with the Center's concerns due to his role in preparing the draft complaint. Mr. Ambush also represented the Center in 2007 in a motion to intervene filed under seal in this Court in the case *Steen, et al., v. Islamic Republic of Iran, et al.*, Civ. No. 00-3037 (CKK), in which the Center sought to protect its right to receive funds pursuant to a Claimant Agreement with the plaintiff, Mr. Steen, after Mr. McDermott orchestrated Mr. Steen's revocation of my power of attorney.  In the motion to intervene filed by Mr. Ambush, he argued that "Counsel McDermott has a conflict of interest" because he was hired by the Center to file and bring the Steen case to trial and then sought to interfere with the Center's relationship with Mr. Steen.  It is obvious that Mr. Ambush has borrowed a page from McDermott's playbook in his current efforts to secure a share of

7

the recovery in the Franqui case. Mr. Ambush's use of the name "McDermott" in reference to himself in his December 17, 2008, can only be understood as Mr. Ambush's acknowledgment, albeit through an attempt at humor, that he was engaging in the same tactics used by Mr. McDermott. This outlandish admission, in my opinion, neatly summarizes Mr. Ambush's breach of his duty of loyalty to the Center.

I have read this Declaration, and I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this *12th* day of April, 2009:

_____
Dr. Michael Engelberg

8

# EXHIBIT C

## STATEMENT UNDER PENALTY OF PERJURY

1.      We, Eliezer, Maria M. and Angel M. Rodriguez Robles, are members of the Estate of Antonio Rodriguez Morales, a Claimant in the case styled *Franqui v. Syria*, Case No. 06-CV-734 (RBW).

2.      We are cognizant of the fact that under the Claimant and Center Agreement ("Agreement") that we signed in or around 2002, the Center would retain and pay the lawyers who would pursue the aforementioned case on behalf of the Claimants.

3.      According to the Agreement, the Estate would only pay the Center 20% of the net proceeds recovered from the litigation, and that the total in the aggregate, including legal fees, expenditures and pledges which would never exceed 20% of Claimants' recovery from the litigation.

4.      Before signing the new Retainer Agreement with Joshua M. Ambush ("Mr. Ambush"), we were not cognizant of the fact that Mr. Ambush was being compensated for his legal work in the litigation by the Center. In addition, we were led to believe that payment of the compensation was contingent on our signing the Retainer Agreement.

5.      Therefore, we did not have the necessary information which would have allowed us to reach a decision regarding the necessity and reasonableness of the "new" Retainer Agreement.

In San Juan, Puerto Rico, this December 9, 2009.


Eliezer Rodriguez Robles                                    Maria M. Rodriguez Robles


Angel M. Rodriguez Robles

# EXHIBIT D

## STATEMENT UNDER PENALTY OF PERJURY

1.      I, Noemi Rodriguez Robles, am a member of the Estate of Antonio Rodriguez Morales, a Claimant in the case styled *Franqui v. Syria*, Case No. 06-CV-734 (RBW).

2.      I am cognizant of the fact that under the Claimant and Center Agreement ("Agreement") signed with the American Center for Civil Justice, Inc. ("Center") on July 23, 2002, the Center would retain and pay the lawyers who would pursue the aforementioned case on behalf of the Claimants.

3.      According to the Agreement, the Estate would only pay the Center 20% of the net proceeds recovered from the litigation, and that the total in the aggregate, including legal fees, expenditures and pledges which would never exceed 20% of Claimants' recovery from the litigation.

4.      Before signing the new Retainer Agreement with Joshua M. Ambush ("Mr. Ambush"), I was not cognizant of the fact that Mr. Ambush was being compensated for his legal work in the litigation by the Center. We were led to believe that payment of the compensation was contingent on our signing the Retainer Agreement.

5.      Therefore, I did not have the necessary information which would have allowed me to reach a decision regarding the necessity and reasonableness of the "new" Retainer Agreement.

In San Juan, Puerto Rico, this December 9, 2009.


*Noemi Rodriguez Robles*
Noemi Rodriguez Robles


**REDACTED**

# EXHIBIT E

## STATEMENT UNDER PENALTY OF PERJURY

1.    I, Ruth D. Rodriguez, am a member of the Estate of Antonio Rodriguez Morales, a Claimant in the case styled *Frunqui v. Syria*, Case No. 06-CV-734 (RBW).

2.    I am cognizant of the fact that under the Claimant and Center Agreement ("Agreement") signed with the American Center for Civil Justice, Inc. ("Center") on June 11, 2002, the Center would retain and pay the lawyers who would pursue the aforementioned case on behalf of the Claimants.

3.    According to the Agreement, the Estate would only pay the Center 20% of the net proceeds recovered from the litigation, and that the total in the aggregate, including legal fees, expenditures and pledges which would never exceed 20% of Claimants' recovery from the litigation.

4.    Before signing the new Retainer Agreement with Joshua M. Ambush ("Mr. Ambush"), I was not cognizant of the fact that Mr. Ambush was being compensated for his legal work in the litigation by the Center.

5.    Therefore, I did not have the necessary information which would have allowed me to reach a decision regarding the necessity and reasonableness of the "new" Retainer Agreement.

December 7, 2009.

Ruth D. Rodriguez

**REDACTED**

# EXHIBIT F

## STATEMENT UNDER PENALTY OF PERJURY

1.     I, Efrain Berganzo, am a member of the Estate of Angel Berganzo Colon, a claimant in the case styled *Franqui v. Syria*, Case No. 06-CV-734 (RBW).

2.     I am cognizant of the Claimant and Center Agreement ("Agreement") signed in behalf of the Estate by Efrain Berganzo Cruz with the American Center for Civil Justice, Inc. ("Center") on June 11, 2002. According to said Agreement, the Center would retain and pay the lawyers who would pursue the aforementioned case on behalf of the Claimants.

3.     According to the Agreement, the Estate would only pay the Center 20% of the net proceeds recovered from the litigation, and that the total in the aggregate, including legal fees, expenditures and pledges which would never exceed 20% of Claimants' recovery from the litigation.

4.     After Joshua M. Ambush ("Mr. Ambush") represented to the Estate that he would not be compensated for his work unless we signed an additional retainer agreement, on December 15, 2008 I signed a Retainer Agreement where the Estate agreed to pay an additional 10% of the net proceeds to Joshua M. Ambush ("Mr. Ambush").

5.     The Estate was not cognizant, and Mr. Ambush never revealed to us, that the Center had retained him to be counsel for the aforementioned litigation, and that he was being compensated for his legal work in the litigation by the Center.

6.     The Retainer Agreement was signed under duress, under false representations, and without the necessary information which would have allowed the Estate to reach a reasonable, well-informed decision regarding the necessity and reasonableness of the "new" Retainer Agreement.

Efrain Berganzo

REDACTED

# ATTACHMENT C

LAW OFFICES OF
# CHARLES R. BOTH
1666 CONNECTICUT AVENUE, N.W.
SUITE 500
WASHINGTON, D.C. 20009

TELEPHONE:  202.833.9060
FACSIMILE:   202.463.6686

EMAIL: CHAS@CRBOTHLAW.COM

February 21, 2011

James Edwards, Esq.
Ober, Kaler, Grimes & Shriver, P.C.
120 East Baltimore Street
 Suite 800
Baltimore, MD 21202

Re:     *The Estate of Angel Berganzo Colon v. Ambush*, CA 10-1044 (GAG) (D.P.R.)
        Subpoena to Produce Documents, Information or Objects, etc., issued 12-10-10,
        (United States District Court for Eastern District of New York)

Dear Mr. Edwards:

I am responding to your letter of February 17, 2011 with respect to the above captioned matter, demanding further production of documents "on or before Monday February 21, 2011".

As you are aware, the American Center for Civil Justice ("the Center"), Rabbi Perr and Dr. Engelberg are not parties in the underlying *Berganzo* matter pending in the District Court in Puerto Rico. Despite my clients' non-party status in this matter, in response to a subpoena ostensibly issued by the Eastern District of New York, we responded on February 9, 2100 and provided to you those documents that were in the American Center's possession which had not been previously provided to Mr. Ambush by the Center, or previously provided to the Center by Mr. Ambush in connection with *American Center for Civil Justice v. Joshua Ambush*, Case No. 1:09-cv-0023 (PLF) (D.D.C.). We regret that you are not satisfied with our response, but do not intend to provide additional information (to the extent that you are correct that such exists) at this time.

Since responding, we have been advised of your efforts to secure similar documents and information from Apple Bank, the filing of a Motion to Quash and for Preliminary Injunction, and Judge Hellerstein's direction that only Bank documents reflecting the payments to Mr. Ambush would be provided in response to that subpoena, and that all other materials improperly provided to you by the Bank, which include personal and confidential information, be returned to the Center forthwith. To our knowledge, these improperly obtained materials from Apple Bank have not yet been returned.

It is now obvious to us that the multiple subpoenas you have obtained from the New York District Courts directed to the Center, Rabbi Perr and Dr. Engelberg are overly-broad, harassing and issued for the improper purpose, as a back-door means of discovery in connection with *American Center for Civil Justice v. Joshua Ambush*, Case No. 1:09-cv-0023 (PLF) (D.D.C.), which as you know we have moved to Stay or transfer to the District Court in Puerto Rico.

James Edwards, Esq.
Ober, Kaler, Grimes & Shriver, P.C.
February 21, 2011
Page 2

     Given these circumstances and reality, we do not intend to search for, provide any additional documents or materials, or further respond to the alleged deficiencies set forth in your letter of February 17, 2011 at this time search.  Furthermore, please be advised that neither Rabbi Perr nor Dr. Engelberg intends to attend the depositions scheduled for later this week.

Very truly yours,

Charles R. Both

cc:    Rabbi Perr
      Dr. Engelberg