UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ———————————————— X | |
| | : Docket No. 11-MC-148 (JG) |
| | : |
| IN RE:  DR. ENGELBERG AND MR. | : **Opposition to Motion for** |
| PERR | : **Contempt Adjudication** |
| | X |
| ———————————————— | |

**MEMORANDUM IN OPPOSITION TO PETITIONER JOSHUA AMBUSH'S
MOTION TO ADJUDICATE RESPONDENT ELIEZER PERR IN CONTEMPT**

Respondent, Rabbi Eliezer Perr, submits this Opposition to Petitioner, Joshua Ambush's,
request for "a Court Oder compelling, subject to body attachment, Respondent to appear for
deposition in New York . . . and . . . to pay reasonable attorneys' fees and costs incurred by Mr.
Ambush as a result of Respondent Perr's multiple non-appearances, . . ." (Petitioner May 13,
2011 letter, hereinafter "Motion"), on the grounds that such relief is neither required nor justified
given the circumstances set forth below, and simply interposed to further intimidate and harass
Respondent.

<u>Introduction</u>

As set forth in the accompanying Declaration of Rabbi Perr, neither the Center, nor Rabbi
Perr, are parties in the case [*The Estate of Angel Berganzo Colon, et al. v. Joshua Ambush*, 10-
cv-1044(GAG) (D.P.R.) ("*Berganzo*")] giving rise to this request to hold me in contempt of a
Consent Order dated March 28, 2011, issued in this Court (Perr Dec. at ¶ 3).  Moreover, Rabbi
Perr has no first-hand knowledge of the facts regarding the *Berganzo* case (Perr Dec. at ¶ 2). This
fact is well known to Mr. Ambush and his counsel. (*Id.*).  Despite this, Rabbi Perr, and the
Center, was served with a subpoena in the *Berganzo* case to produce documents and to testify
(Perr Dec. at ¶ 10).  On February 9, 2011, following discussion with Mr. James Edwards,

counsel for the Petitioner here and in the D.C. litigation, the Center fully responded the subpoena directed to it, by producing all documents that had not previously been produced in a separate case in the District of Columbia (*See* Perr Dec. ¶ 10 and Exhibit C attached thereto).  Because of intervening controversy and litigation relating to another subpoena (*see* Perr Dec. ¶¶ 11-13), on February 21, 2011, our counsel in the D. C. litigation, advised counsel for the Petitioner that neither I, nor Dr. Engelberg, would appear for the depositions scheduled for February 24 and 25, 2011 (Perr Dec. ¶ 14 and Exhibit G attached thereto).

Subsequently, in order to resolve the re-scheduling of the depositions as contemplated by the March 28, 2011 Consent Order entered by this Court (*See* Motion Exhibit A), we agreed to accommodate the Petitioner by having the depositions held in Puerto Rico, where the *Berganzo* case was pending (Perr Dec. ¶ 15).

On March 23, 2011, Rabbi Perr's eldest son unexpectedly died (Perr Dec. ¶ 16) and the Jewish Passover Holiday was celebrated between April 19 and 26, 2011 (Perr Dec. ¶ 17). Arrangements had been negotiated to re-schedule the February depositions for May 5, 2011, to be taken in San Juan to minimize the cost for counsel for Petitioner, whose offices are in San Juan (*See* Perr Dec. ¶¶ 15, 17).  On May 4, 2011, Rabbi Perr notified his counsel, who at the time was in Puerto Rico, that because of his personal circumstances he would not appear for his deposition the following day (Perr Dec. ¶¶ 16-17).  On the same day, at the conclusion of the deposition of Center Executive Director Engelberg, advised that Rabbi Peer would not appear the next day and agreed to promptly re-scheduling Respondent's deposition in New York, at a time convenient to him (Perr Dec. ¶19; *see* Motion Exhibit B (transcript pp.8-11).  Because Since Mr. Edwards had been in San Juan to attend the depositions of Dr. Engelberg and his client, Mr.

Ambush, he was hardly inconvenienced and did not incur any additional expense by my having to re-schedule. (*Id.*).

On May 13, 2011, without even attempting to re-schedule the deposition Petitioner filed the instant motion to hold me in contempt (Perr Dec. ¶ 20). If the object was to depose Rabbi Perr, the motion was totally unnecessary and should be denied.

The instant Motion for an Order adjudicating Respondent in "contempt", the issuance of a "body attachment" and the imposition of a fine of substantial "costs" can only be considered in the context of the multiple cases in which the Petitioner, attorney Joshua Ambush is currently involved.

**Background**

### ***The Berganzo Litigation***

The Estate of Angel Berganzo Colon represented by Efrain and Ruben Berganzo, the Estate of Antonio Rodriguez Morales represented by Noemi Rodriguez Robles, Eliezer Rodriguez Robles, Angel M. Rodriguez Robles, Maria M. Rodriguez Robles and Ruth D. Rodriguez Robles ("Plaintiffs") filed a complaint on January 25, 2010 in the District Court for the District of Puerto Rico against Joshua M. Ambush ("Defendant") seeking recovery of $2,000,000.00 in attorney's fee alleged to have been wrongfully paid to Defendant by Plaintiffs. (Seniawski Affirmation[1]., Ex. A., attached hereto as Exhibit 1) The action is captioned Estate of Ángel Berganzo-Colón, et al. v. Ambush, Civil No. 10-1044 (GAG) (MEL) and remains pending in the District Court for the District of Puerto Rico (*Berganzo* case"). The Complaint alleges that Defendant Ambush deceived "Plaintiffs, who are lay persons from humble Puerto Rican families

---

[1] As set forth more fully *infra* at pp. 5-8, in January 2011, Petitioner served a subpoena, without any notice to the Respondent on its Bank and improperly obtained confidential personal financial information to which it had no right. Upon learning of the improper subpoena and disclosure, A Motion to Quash was filed and granted. Attached to the Motion were the Affirmations of Barbara Seniawski and Neal Sher with Exhibits, these filings are attached hereto, and incorporated by reference as Exhibits 1 and 2 to this Memorandum in Opposition.

affected by the Lod Airport Massacre of May 30, 1972 … in Tel Aviv, Israel," "through misrepresentations and nondisclosure by him and/or his agents," into "sign[ing] a certain additional 'retainer agreement' [with Mr. Ambush personally] for fees in excess of what the Estate's members had originally agreed to pay the American Center for Civil Justice [per agreement with the American Center for Civil Justice]…, who had retained and was paying Mr. Ambush his legal fees for representing the Estates in the [Libya] action, a fact unbeknownst to plaintiffs." (*See*, Exhibit 1 (Seniawski Aff., Ex. A ¶ 2.)).  The Complaint further alleges that, although attorney Ambush was paid in full by the American Center, he represented to Plaintiffs that he had not been paid and also represented to Plaintiffs that they would not receive the portion of the recovery due the Estate unless they signed the additional retainer agreement with him. ( *Id.* at Seniawski Aff., Ex. A ¶ 32, 33.)).  Plaintiffs, representatives of the two estates as issue, are seeking to recover the attorneys fees retained by Ambush, who administered the distribution of the recovered funds, pursuant to the additional retainer agreements: an amount alleged to be $2,000,000.  (*Id.* at Seniawski Aff., Ex. A ¶ 49.).

Neither Rabbi Perr, the Respondent here, nor the Center are, and have never been, parties to the *Berganzo* case.

### ___The D.C. Litigation___

In a separate action, filed on February 6, 2011, the Center has sued Ambush in the District of Columbia on its own behalf regarding attorneys fees wrongfully claimed by Ambush, seeking a declaratory judgment that it did not owe Ambush any fees additional to the hourly pay it had previously paid him, and alleging breach of fiduciary duty and tortious interference with contract. (the "D.C. Litigation").  (*Id*. at Seniawski Aff. Ex. B). Mr. Edwards, and Ober, Kaler, Grimes & Shriver PC ("Ober Kaler") represents Ambush in the D.C. Litigation.  (Id.).  Ambush

has counterclaimed alleging utterly unfounded allegations against Rabbi Perr and Dr. Engelberg. (*see* Exhibit 2, (Sher Aff. ¶ 8).  The counterclaim also references many of the entities and individuals listed in the subpoena served on Apple Bank.  (*Id*. at Sher Aff. ¶ 9.)  In fact, the subpoena in the Southern District matter involving Apple Bank appears to have been served under the auspices of the *Berganzo* case because Ambush cannot obtain the information in the D.C. Litigation because, among other reasons, discovery has been on hold for many months pending the resolution of several outstanding motions.  (*Id.* at Sher Aff. ¶ 10.)

### *The Subpoena in the Southern District of New York*

On January 7, 2011, ostensibly for use in the *Berganzo* case, Petitioner obtained subpoena issued by the Southern District of New York, to Apple Bank, to produce documents and information regarding bank accounts and financial information of the Center and Respondent here (the SDNY subpoena").  (*See* Exhibit 1, (Seniawski Aff., Ex. D.)).   The SDNY subpoena was signed by an attorney for the Ober, Kaler located in Baltimore, Maryland.  Ober Kaler represents Ambush in the *Berganzo* case.  (*Id.*  at Seniawski Aff., Ex. E.). No notice of the request for the SDNY subpoena was served on Respondent, or any other representative of the Center.  The SDNY subpoena was returnable on February 17, 2011 at Ober Kaler's offices in Baltimore. On January 10, 2011, Defendant served the SDNY subpoena on Apple Bank.  On or about January 27, 2011, Apple Bank produced documents in response.  (*See* Exhibit 2, Sher Aff. ¶ 13.)  On January 31, 2011, 24 days after the subpoena issued, Defendant notified Plaintiffs' counsel – by email, an unauthorized method of service – for the first time of the issuance and service of the SDNY subpoena.  (*Id.* at Sher Aff. ¶ 14.)  Apple Bank never notified any representative of the Center, or the Respondent here, that it had received a subpoena for records relating to them, or their family members, or that it had disclosed any records.

Respondent first became aware of the SDNY subpoena on February 2, 2011. (*Id.* at Sher Aff. ¶ 15.) Respondent Perr immediately contacted the manager of the Apple Bank branch where he does business, advising that he wanted to protect from disclosure the release of the personal and confidential information Ober Kaler demanded in its Subpoena. (*Ibid.*) On or about February 10, 2011, Respondent Perr learned that Apple Bank had produced to Ober Kaler many records and account information included within the SDNY subpoena. (*Id.* at Sher Aff. ¶ 17.)

On February 10, 2011, Apple Bank also delivered to Respondent Perr's representative copies of the documents it had produced to Ober Kaler. (*Id.* at Sher Aff. ¶ 20.) The documents included, *inter alia*, personal account information for Rabbi Perr, his wife, children and other family members, none of which could have any relevance whatsoever to the *Berganzo* case. (*Ibid.*) Moreover, the documents contain account signature cards, social security numbers and other information that potentially could expose these individuals to identity theft or other fraud. ( *Ibid.*) In light of the contentious litigation in D.C. against Ambush, the Respondent here, and his family members were justifiably fearful of the improper use of their private information by Ambush and his lawyers for purposes of intimidation. (*Ibid.*) Accordingly, Respondent filed a Motion to Quash, and a separate Motion to Revoke or Disbar the Admission Pro Hac Vice Status of Attorneys Schollert and Edwards" in *Berganzo* case. (*see* Exhibit 1,Sher Aff., Exs. A, B.)

Respondent argued that the SDNY subpoena should be quashed because (1) it was oppressive in violation of Rule 45(c) (3) (A) (iv); (2) it sought private confidential financial information and data in violation of the privacy interests of Rule 45(c) (3) (A) (iii); (3) it violated the Scheduling Order in the *Berganzo* case because it was issued after the close of written discovery on November 29, 2011. (*Ibid.*) Plaintiffs' motion to quash remains pending at this time. Due to the egregious nature of the violations committed by Ambush and his counsel in

executing and serving the Subpoena, Plaintiffs also moved to revoke the *pro hac vice* admissions of and to disbar Ambush's counsel from practice in the Puerto Rico Litigation. (*Ibid.*) As described in the memorandum attached to the Motions in the Southern District, Ambush and his counsel played fast and loose with four different jurisdictions: (1) Southern District of New York, by issuing an improper subpoena without authorization, (2) the District of Puerto Rico for failing to notify Plaintiffs of the issuance of the Subpoena and for violation of the court-ordered written discovery cut-off, (3) the District of Columbia, the litigation to which the Subpoena actually appears to relate, in which discovery is stayed, and (4) the District of Maryland, by (improperly) issuing the Subpoena out of the Southern District of New York even though the Subpoena specifies that responsive documents be produced in Baltimore, Maryland, likely in an effort to try to escape Maryland's statutory financial non-disclosure provisions.

By order dated February 22, 2011, Judge Hellerstein modified the subpoena, finding that:

> "As written, however, the subpoena is impermissibly broad, for it goes beyond the scope of the ALCJ's alleged participation in the lawsuit. I therefore order the subpoena modified, to cause Apple Bank to disclose only documents evidencing (i) transactions between Movants and the ACLJ for purposes related to litigation activities, (ii) that gave rise to the suit in the District of Puerto Rico.

(*See* Perr Declaration Exhibit F).

Given this background of aggressive litigation tactics, it is obvious that Petitioner is not primarily interested in securing relevant and pertinent information in the *Berganzo* case, which Respondent does not possess, but rather to continue to harass and intimidate the Respondent. The Court should not assist in this objective.

## ARGUMENT

I.      **The Motion Should Be Rejected Because Petitioner Failed to Comply with Local Rule 37.3.**

Local Civil Rule 37.3. (Mode of Raising Discovery and Other Non-Dispositive Pretrial Disputes with the Court) provides as follows:

> (a) **Pre-motion Conference.** Prior to seeking judicial resolution of a discovery or non-dispositive pretrial dispute, the attorneys for the affected parties or non-party witness shall attempt to confer in good faith in person or by telephone in an effort to resolve the dispute.

Upon being notified that Respondent would not be able to appear at the deposition scheduled for May 5, 2011, counsel advised Petitioner repeatedly offered "to make [Rabbi Perr] available at [Petitioner's] convenience in New York, as soon as practicable" (Motion Exhibit B at p. 9 and 10), counsel for Petitioner never contacted Respondent, or undersigned counsel to re-schedule the deposition or to "attempt to confer in good-faith . . . in an effort to resolve the dispute."[2]

Petitioner's failure to attempt "in good faith' to resolve this dispute is sufficient grounds for denying the relief sought herein. The "unclean hands" doctrine "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945); *ABF Freight Sys. v. NLRB,* 510 U.S. 317, 329-330 (U.S. 1994); *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 127(2d Cir. 2009).

---

[2] Indeed, even in connection with its initial Motion which gave rise to the March 28, 2011 Consent Order at issue here, Petitioner also failed to comply with Rule 37.3.    Furthermore, at no time either prior to obtaining subpoenas from this Court, or thereafter, had there been any discussions with Respondent or his counsel regarding the time or place for conducting any depositions. Contrary to the suggestion contained in Petitioner's initial February 25, 2011 letter to this Court, although counsel for Mr. Ambush contacted our counsel to confirm that we would not attend the depositions on February 25, 2011, there was no "good-faith effort" to resolve the dispute. Neither the date, time, scope or purpose of the depositions was discussed, and no effort was made to insure that the proposed depositions would not be used in connection with the D.C. case.

## II.      An Adjudication of Civil Contempt Is Not Necessary to 'Coerce' Compliance with the March 28, 2011 Consent Order

A court's inherent power to hold a party in civil contempt may be exercised only when *inter alia* the party has not diligently attempted in a reasonable manner to comply. *See EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,* 753 F.2d 1172, 1178 (2d Cir.1985), *aff'd,* 478 U.S. 421 (1986); *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.) ( *per curiam* ), *cert. denied,* 454 U.S. 832 (1981).  A civil contempt sanction may serve to reasonably compensate the complainant for losses resulting from the contemnor's noncompliance. *See United Mine Workers,* 330 U.S. at 303-042; *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 673 F.2d 53, 56 (2d Cir.), *cert. denied,* 459 U.S. 832 (1982); *New York State Nat. Organization for Women v. Terry*, 886 F.2d 1339, 14 Fed. R. Serv. 3d 922 (2d Cir.1989).  However, compensatory sanctions should reimburse the injured party only for its actual damages. *United Mine Workers,* 330 U.S. at 304. While willfulness is not an element of civil contempt, the contemnor's state of mind, such as his or her good faith or his or her reliance on the advice of counsel, is relevant in mitigation of any penalty. *Rogers v. Webster,* 776 F.2d 607, 4 Fed. R. Serv. 3d 430 (6th Cir. 1985);  *TWM Mfg. Co., Inc. v. Dura Corp.,* 722 F.2d 1261, 1273 (6th Cir.1983).  Here, because Respondent Rabbi Perr attempted to comply with the Consent Order re-scheduling his deposition for May 5, 2011, and continues to be available to be deposed, an adjudication of civil contempt is not required to 'coerce' compliance or to provide reasonably compensate Petitioner for necessary costs in seeking compliance.

Respondent Perr is now, and has throughout this matter been, ready and willing to be deposed in connection with matters relating to the multiple court actions arising from the 1972 terrorist incident that occurred at Lod (now Ben Gurion) airport in Tel Aviv, Israel.  Petitioner, attorney Ambush, and his counsel Mr. James Edwards, had been repeatedly advised that,

although Respondent Perr had no first-hand knowledge of the matters involved in the case in Puerto Rico he was willing to be deposed, upon agreement between counsel, first in February 2011, and subsequently in May 2011 (*See* Perr Dec. ¶ ¶ 2, 19). It was only because of a personal family tragedy that Respondent Perr did not appear for his deposition on May 5, 2011, having advised Petitioner the previous day in order to avoid any unnecessary additional costs to Petitioner. At that time, Respondent reiterated his availability and willingness to re-schedule the deposition at the convenience of Petitioner. That offer was summarily rejected and the instant Motion was filed without any opportunity for consultation and resolution without the necessity of additional judicial involvement. (*See* Perr Dec. at ¶¶ 13-19). Clearly, it appears that the objective is not to secure relevant information from Respondent, but rather, as he believes to 'intimidate', "harass' and expose Respondent to needless expense (Perr Dec. ¶¶ 20-21).

### III.     The Relief Requested is Not Calculated to Reasonably Compensate for Any Losses Resulting From Respondent's Alleged Non-Compliance with the March 28, 2011 Consent Order

In addition to seeking and adjudication of contempt, Petitioner seeks "reasonable attorneys' fees and costs incurred by Mr. Ambush as a result of Respondent Perr's [alleged] multiple non-appearances, including the filing of multiple proceedings in this Court to compel his appearance." (Motion at p. 1).

As shown above, *supra* at pp. 8-9, the Petitioner never complied with Local Rule 37.3. Had he done so, none of the 'multiple proceedings' in this Court would have been necessary--- neither would he, the Respondent or the Court have wasted substantial judicial and financial resources. In these circumstances a request for $18,000.00 ( See Perr Dec. Exhibit A) in 'costs' is the epitome of chutzpah.

Moreover, the 'accounting' of fees and costs is highly exaggerated and includes fees and costs incurred prior to the cancellation of the deposition and not related to Respondent Perr's non- appearance at the schedule deposition on May 5, 2011. Furthermore, because Petitioner's counsel was already in Puerto Rico for the deposition of Dr. Engelberg, and for his own client's deposition on May 3rd, he did not incur any additional travel or time expenses. Petitioner was notified of was promptly notified of Respondent's unavoidable non-appearance and no additional travel expenses can legitimately be claimed, nor were any incurred.

IV. **Any Deposition of Respondent Perr Should be Limited to Matters Related to the *Berganzo* case and Avoid Further Embarrassment or Oppression**

In general, a party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Nonetheless, a court has discretion to circumscribe discovery even of relevant evidence by making "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *see Herbert v. Lando*, 441 U.S. 153, 177, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979). Fed. R. Civ. P. 45(c) provides additional protection for non-parties subject to a subpoena by mandating that a court "quash or modify the subpoena if it . . . subjects [the] person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). The Advisory Committee's Notes to the 1991 amendments to Fed. R. Civ. P. 45 state that the amendments have "enlarged the protections afforded persons who are required to assist the court by giving information or evidence." Fed. R. Civ. P. 45 1991 advisory committee's note; *see id.* (Fed. R. Civ. P. 45(c)(3)(A)(iv) "requires the court to protect all persons from undue burden imposed by the use of the subpoena power").

Determinations of issues of "undue burden" are committed to the discretion of the trial court. *See, e.g., Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v.*

*Friedman (In re Friedman),* 350 F.3d 65, (2d Cir. 2003); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996); *see also* Fed. R. Civ. P. 26 1970 advisory committee's note ("Rule 26(c) . . . confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of [discovery under Fed. R. Civ. P.] 26(b), and these powers have always been freely exercised."); *Herbert*, 441 U.S. at 177 ("The district courts should not neglect their power to restrict discovery" under Fed. R. Civ. P. 26(c) and "should not hesitate to exercise appropriate control over the discovery process."). In making this determination, a court must limit a party's discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). Thus, it is settled that "judges may prevent [a] proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship." *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Friedman)* 350 F.3d at 70.

Here, Respondent has no first-hand knowledge about the matters at issue in the *Berganzo* case. (*See* Perr Dec. at ¶¶ 2, 21). A review of the recent deposition of Michael Engelberg, the Center's Executive Director, makes clear, the Petitioner is more interested in facts and circumstances at issue in the D.C. litigation, than seeking any information relevant in *Berganzo*. (*See* Perr. Dec. Exhibit H). Should Respondent Perr be deposed, the Court should direct that the inquiry be limited to facts and circumstances involved in the claims asserted in the *Berganzo* case and not impose an inappropriate further burden on Respondent.

## <u>CONCLUSION</u>

For all of the forgoing reasons, Petitioner's request to adjudicate Respondent Rabbi

Eliezer Perr in Contempt of the Consent Order dated March 28, 2011 should be denied.

Respectfully submitted,


\_\_\_\_\_/s/_____
Charles R. Both, D.C. Bar No. 42424
*Pro Hac Vice*
Law Offices of Charles R. Both
1666 Connecticut Avenue, NW
Suite 500
Washington, D.C. 20009
202 833-9060
202 463-6686 (Facsimile)
chas@crbothlaw.com


_____/s/_____
Neal M. Sher (NS 9127)
551 Fifth Avenue
31st Floor
New York, NY 10176

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a copy of the foregoing Memorandum in Opposition to Petitioner Joshua Ambush's Motion to Adjudicate Respondent Perr in Contempt and the Declaration of Eliezer Perr, with Exhibits was served through the Court CM/ECF filing on all counsel of record to this proceeding and by overnight FEDEX delivery pre-paid upon :

Megan J. Muoio, Esq.
Allyn & Fortuna, LLP
200 Madison Avenue, 5th Floor
New York, New York  10016
(212) 213-8844


James Edwards, Esq.
Ober, Kaler, Grimes & Shriver, P.C.
120 East Baltimore Street
 Suite 800
Baltimore, MD 21202


_____/s/_____
Charles R. Both